Miller v. Bradish.

MILLER v. BRADISH.

1. **Corporations:** UNWARRANTED DIVIDENDS: LIABILITY OF STOCK-HOLDERS. The word "funds," as used in § 1072 of the Code, includes all the resources of a corporation, and not merely the cash on hand; so that the statute is not violated by the payment of dividends when the cash on hand is not sufficient to meet liabilities, if the entire resources of the corporation are sufficient for that purpose.

2. ——: ——: ——. The word "liability," as used in § 1072 of the Code, means existing indebtedness, the payment of which can be enforced, and does not include the capital stock of the corporation.

3. ——: ——: ——. Where, at the time a dividend is declared and paid, the corporation has personal property more than enough to pay its debts and the dividend, besides valuable real estate and machinery, there is not, in the paying of the dividend, any diversion of the funds, under § 1072 of the Code.

4. ——: INTENTIONAL FRAUD: CODE, § 1071: EVIDENCE. In order to hold a stockholder of a corporation liable for intentional fraud, under § 1071 of the Code, it is not sufficient to show an intention to deceive, but there must have been some act fraudulently done with that intention. (*White v. Hosford*, 37 Iowa, 563.) The evidence in this case considered (see opinion) and *held* not to establish any such fraudulent act on the part of defendant.

5. **Practice on Appeal**: QUESTION NOT RAISED BELOW. Questions not raised on the trial of law actions in the lower courts cannot be raised in this court on appeal.

*Appeal from Winneshiek District Court.*

MONDAY, JUNE 21.

THE defendant was a stockholder in an insolvent corporation, and this action was brought at law to recover of him a debt of the corporation. Trial by jury. Judgment for the defendant and plaintiff appeals.

*C. Wellington* and *Chas. P. Brown*, for appellant.

*Willett & Willett* and *S. P. Adams*, for appellee.

SEEVERS, J.—I. There are three counts in the petition. The issue under the first was, by consent, withdrawn from the jury and submitted to the court, and the court found for the defendant. It is provided by statute that "the diversion of the funds of the corporation to other objects than those mentioned in their articles, and in the notices published, as aforesaid, if any person is thereby injured, and the payment of dividends which leave insufficient funds to meet the liabilities of the

*1. CORPORATIONS: unwarranted dividends: liability of stockholders.*

corporation, shall be deemed such frauds as will subject those concerned to the penalties of the preceding section; and such dividends, or their equivalent, in the hands of the individual stockholders, shall be subject to such liabilities." Code, § 1072.

The first count in the petition is based on this statute, and it states that dividends were declared by the corporation, and paid to the defendant, when the funds of the corporation were insufficient to meet the liabilities. It will be conceded that plaintiff is entitled to recover if such dividends were of the character stated. The corporation was organized, and the dividends were declared, in 1875 and 1876; and one material question is as to the meaning of the word "funds," used in the foregoing statute. Counsel for the appellant contend that it means "cash on hand," and it is said that when one is in funds to meet all obligations, it would not be understood that such funds consisted of notes and accounts and real estate; and Bouvier's Law Dictionary and Webster are referred to. That such is the restricted meaning of the word, and that it should be so construed in some cases, will be conceded. But it is quite clear that it has a broader meaning, and, in some cases, should be construed to include property of every kind, when such property is specially contemplated is something to be used or applied in the payment of debts. The word "funds" occurs twice in the foregoing statute, and as first used it undoubtedly means that if the property of the corporation be diverted, and any one is thereby injured, the person causing such diversion will be liable to the penalties provided in the statute. As thus used, the word means and includes something more than cash on hand. It evidently includes all the resources of the corporation, and no sufficient reason has been given why it does not mean the same thing when it is used the second time in the same section of the Code. "Diversion of funds" and "insufficient funds," in so far as the meaning of the word "funds" is concerned, must, it seems to us, be construed to mean precisely

the same thing. A corporation may, we think, lawfully
declare and pay a dividend, although it does not have cash
on hand to pay all its liabilities. Necessarily this must be
so, for there is not a national bank in the state that has been
in business over a year that has at any time cash on hand
sufficient to pay all its liabilities, and this must be true of
other corporations engaged in active business. The assets,
resources and funds of the corporation must consist of cash
on hand and other property, and if such assets exceed the
liabilities, a dividend can be lawfully declared.

II. It was stipulated that in 1875, when the dividend
was declared, the value of the assets, funds and resources of
the corporation was $156,904.65, and the lia-
bilities were $56,065.23. The capital stock was
$106,860, and a dividend of ten per cent on the capital stock
was declared, amounting to $10,686. It will be observed
that the statute declares that the "payment of dividends which
leave insufficient funds to meet the liabilities of the corpora-
tion" shall be deemed a fraud. It will be also observed that
the indebtedness and the capital stock exceed the assets of
the corporation, and counsel for the appellant contend that
the capital stock is a liability, and therefore the dividend was
unlawfully declared and paid. Counsel for the appellee con-
tend that the liabilities of the corporation contemplated by
the statute are the indebtedness other than the capital stock.
We incline to think that the capital stock, in one sense, is a
liability of the corporation, and yet it is not a debt. The
interest of a stockholder consists of his right to participate
in the profits, and it is only upon the dissolution of the cor-
poration that he becomes entitled to any portion of the assets
other than the dividends. He cannot bring an action against
the corporation for the amount paid for stock during the
existence of the corporation. The corporate liability for the
payment of the capital stock is remote and contingent. The
object of the statute is the protection of creditors other than
holders of stock. If the whole capital stock is returned to

the stockholders in the form of dividends, a creditor has no right to complain if there remain sufficient funds belonging to the corporation to pay him. The word "liability," as used in the statute, should be construed to mean existing indebtedness at the time the dividend is declared, the payment of which could be enforced. That such is the proper construction we think is apparent from other sections of the Code in which the word "liability" is used as synonymous with "indebtedness." See sections 1061–1063.

Deducting the dividends paid in 1875, the remaining assets of the corporation were of the value of $146,218.65; the debts amounted to $56,065.23; surplus, after paying all liabilities, $90,153.42. That the corporation was solvent—that is, abundantly able to pay all its creditors—must be true. It had sufficient funds to pay all its liabilities, and if it had then ceased to do business, and gone into liquidation, the plaintiff and all other creditors would have been paid. Now, it makes no difference what afterwards occurred, but the question is, was the dividend lawful at the time it was paid? We think it was. The facts as to the dividends of 1875 and 1876 are substantially the same. Therefore the ruling of the court as to the right to recover under the first count is correct.

III. The right to recover on the second count is based on two grounds. The first is that the payment of dividends was a diversion of the funds of the corporation, as provided in the first clause of section 1072 of the Code, and because of such diversion the plaintiff was damaged. It is said in argument, by counsel for appellant, that the defendant "participated in fraudulently declaring and paying the dividends." We have examined the petition with care, and have been unable to find any such averment. We therefore assume that it is not alleged in the second count in the petition that any intentional fraud was perpetrated, designed or intended, and therefore, in the absence of any such allegation, it must be assumed that the dividends were

not fraudulently declared, and that the right to recover is not based on a fraudulent diversion of the funds of the corpora-' tion.

Whether the plaintiff is entitled to recover, in the absence of fraud, we shall not stop to inquire, for the reason that we are satisfied that there was no evidence introduced tending to show that there was an unlawful diversion of the funds of the corporation. The corporation made an assignment in 1879, and its insolvency at that time will be conceded, but the conversion of funds complained of took place more than three years prior to that time. It will be conceded that if no dividends had been paid the ability of the corporation to pay its debts would have been greater. It may be that, but for the payment of the dividends, insolvency would not have occurred; but this is immaterial, if the corporation had sufficient assets to pay all its debts at the time the dividends were paid; and the evidence clearly, in our opinion, shows that it had; and if the jury had found otherwise the finding should have been promptly set aside. The evidence shows this much more conclusively than the facts agreed upon in the stipulation, which only applied to the first count. We deem it unnecessary to set out the evidence, deeming it sufficient to say that when the dividends were declared the corporation had personal property more than sufficient to pay its debts and the dividend, besides real estate and machinery which cost, and was honestly estimated to be worth, upwards of $75,000.

It will be observed that the statute provides that a diversion of the funds to objects other than those mentioned in the articles of incorporation, and in notices required to be published, is deemed a fraud. The articles contemplate and provide that dividends may be declared, and there is nothing in the notice provided for in section 1063 of the Code that conflicts therewith. Therefore there was no unlawful diversion of the funds of the corporation, in any possible view that may be taken of the transaction, in the payment of dividends.

IV.  The second ground of recovery, stated in the second count of the petition, is that the defendant and other stockholders, knowing that the indebtedness of the corporation was largely in excess of that allowed by law, and knowing that the assets had been impaired by payment of dividends, in 1878 voted to increase the capital stock from $104,000 to $200,000; and caused an amendment of the articles to be made so providing; and caused a notice to be published, as required by statute in such case, but intentionally failed and neglected to state in the notice the time and conditions provided for the payment for the additional stock; that such stock was issued to certain persons, who executed their notes in payment therefor, and that such persons were insolvent; that said notes remain unpaid; that after such fraudulent issue of stock the corporation borrowed $20,000, and mortgaged the property of the corporation to secure the same, and that the secretary converted a large amount of the said money to his own use; that defendant knew and participated in the acts aforesaid, and the same was done with the intent of concealing and deceiving the public as to the true condition of the means and liabilities of said corporation, and thereby the plaintiff was damaged.

4. ———: intentional fraud: Code, § 1071: evidence.

The ground of recovery above stated is based on section 1071 of the Code, which provides that " intentional fraud in complying substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their means and liabilities, shall subject those guilty thereof to fine and imprisonment;     *     *     *     and any person who has sustained injury from such fraud may also recover damages therefor against those guilty of participating in such fraud." The fraud relied on is in deceiving the public and individuals.  It will be observed that it is not stated that the defendant did anything with the fraudulent intent of deceiving any one.  All he did was to participate in the acts done with the intent of deceiving the public and the plaintiff. Under the statute, the defendant must have done something

with the fraudulent intent of deceiving. The intention of deceiving is not sufficient. There must be some act fraudulently done. This was held in *White v. Hosford*, 37 Iowa, 566. But, conceding that a cause of action is sufficiently stated, we are of the opinion that there was no evidence tending to show that the defendant had any knowledge of the notice, and of its failure to provide the time when the additional stock should be paid for, and the conditions of its payment. He did nothing in this respect to deceive the public. The corporate right existed to increase the capital stock, and there is no evidence, in our opinion, which tends to show that the defendant knew of, or participated in, any fraudulent deception. Indeed, there is no sufficient evidence that there was any fraudulent act done with intent to deceive. We are impressed, from a careful reading of the whole evidence, that intentional fraud was not committed by any one. The officers and stockholders, in all they did in relation to the increase of the stock, acted, we think, in good faith, and did what they honestly believed was for the interest of the creditors and the corporation, unless the alleged misappropriation by the secretary forms an exception, and of this the defendant had no knowledge. It may be conceded that there was bad management, and even negligence; but this is materially different from intentional fraud. Fraudulent conduct may create a civil liability, whether so intended or not; but intentional fraud must be the commission of some act which was designed and intended to injuriously affect the rights of others. It follows from what we have said that the court did not abuse its discretion in refusing to permit the plaintiff to file an amendment to the petition.

V. Counsel for appellant concede that the third is like the second count, with a single exception. The exception is stated by counsel in these words: "While the liability in the second is confined to a fraudulent intent, the third count charges that said acts were either known or acquiesced in by appellee, or by reason

5. PRACTICE on appeal: question not raised below.

of the carelessness and negligence of appellee, as an officer, suffered to be done." It is conceded, as we understand, that there is no statutory liability for negligence or mismanagement, and that there is no remedy at law therefor; yet, in equity, it is claimed the liability may be enforced. We think it clearly appears from the abstract that no such question was made in the court below, and it cannot be raised for the first time in this court. The judgment is therefore

AFFIRMED.