SAMUEL S. SWARTLEY, Appellant, v. OAK LEAF CREAMERY Co. ET AL.

**Negotiable instruments:** JOINT AND SEVERAL LIABILITY.  The holder
1  of negotiable paper may bring his action thereon against the
   makers either jointly or severally as he elects, and this includes
   defendant corporations.

**Corporations:** MALFEASANCE OF OFFICERS:  PERSONAL LIABILITY.  Un-
2  der the statute, directors of a corporation who make a distribu-
   tion of corporate funds among the stockholders, knowing that
   it will render the company insolvent or materially diminish its
   capital stock, become personally liable for then existing in-
   debtedness; and a creditor may bring his action at law against
   them *either jointly or severally, and it is not essential to re-*
   covery that the property of the corporation be first exhausted.

**Dormant corporation:** ASSETS:  TRUST FUND.  Although a corpora-
3  tion has become dormant, its assets remain as a trust fund
   for the payment of its debts and a lien may be established
   thereon for that purpose.

**Same:** FORM OF ACTION:  MISJOINDER.  Under a petition simply ask-
4  ing judgment against a dormant corporation and the owner of
   its stock, and that the judgment be made a lien upon the real
   estate belonging to the corporation, no equitable principle is
   involved; nor is there a misjoinder of causes.

*Appeal from Allamakee District Court.*— HON. A. N. HOB-
SON, Judge.

MONDAY, OCTOBER 21, 1907.

THE petition contains twenty-four paragraphs, all stated
in one count. It alleged the existence of the Oak Leaf
Creamery Company and Waukon Excelsior Creamery Com-
pany as corporations engaged in manufacturing, buying, ship-
ping, and dealing in dairy products during the year 1896;
that W. W., G. L., and J. E. Hubbell were the owners of
the majority of the stock in each company, and that W. W.
Hubbell was president and G. L. Hubbell secretary and
manager of each; that the business of both corporations was
conducted by G. L. Hubbell as such manager, and in such a
manner that parties dealing with said corporations were un-
able to determine with which the said business was done, " a
part of some transactions being frequently transacted and
done in the name of each of said corporations for a portion
of the time "; that in 1896 the Oak Leaf Company became
indebted to the plaintiff in a large amount, and on the 4th
day of August, in that year, the Waukon Excelsior Creamery
Company, through its said officers, executed a note of $250
to the order of the Oak Leaf Creamery Company, payable
February 4, 1897, and it indorsed the same by its manager
to the plaintiff to be applied in partial payment of said in-
debtedness; that subsequent thereto the officers of the Oak
Leaf Creamery Company " did withdraw from and pay out
of the assets of said corporations funds and moneys belong-
ing to said corporation, which said payments were in the na-
ture and character of dividends and distribution amongst the
officers and stockholders of said corporation, and such pay-
ments and distribution made subsequent to the execution of
said note and the indorsement thereof to Nace & Swartley
did render said corporation insolvent and diminished its cap-
ital stock," which was well known to said officers and con-

sented thereto by them; that said officers willfully abandoned the management of said corporation and ceased to perform their duties as such, and concealed and destroyed all the books and records thereof, and refused to indicate their where-abouts, so that plaintiff and other creditors are denied access to said books and records; that the indebtedness of said corporation was greatly in excess of the amount of its indebtedness, and this was well known to its officers; that the concealment and destruction of the records of the company was for the purpose of escaping personal liability to the creditors of the corporation; that the plaintiff and their assignors were in no better position to enforce collection of the note against the Waukon Excelsior Creamery Company than at the present time, and its rights have not been prejudiced by delay in bringing suit.

The allegations with respect to the abandonment of the corporations, the concealment and destruction of the books and records, the indebtedness of the company, and the withdrawal of its assets was repeated with respect to the Waukon Excelsior Creamery Company, and it is further alleged that since January 1, 1897, no business of any kind has been transacted by either company, no officers have been elected, nor books kept, and no accounting made of the assets of either corporation; that defendant Daniel Williams was a stockholder of the Waukon Excelsior Creamery Company at the time of the note, and knew the official condition of the institution; that at that time the company was owner and holder of a certain tract of land which has not since been alienated, but since then said Williams has entered upon and taken possession of said land and claims to own the same; that his only right thereto arises from the fact that said Williams has acquired all the stock of said corporation, but plaintiff alleges that his claim thereto is subject to the indebtedness of said corporation; that Anna Williams is the wife of said Williams, and claims some right in said property; that, by reason of the foregoing allegations, plaintiff is entitled to

personal judgment against the corporations, and W. W., G. L., and J. E. Hubbell, and to have said judgment declared a lien on the said real estate kept by Williams, and for this relief plaintiff prayed.

W. W., G. L., and J. E. Hubbell collectively and severally assailed the petition by motion that all the paragraphs relating to the withdrawal of assets from the corporations, the concealment or destruction of the books and records, and the abandonment of the corporations, be stricken; also, that the cause of action against these defendants be separated from other cause of action and transferred to the law side of the docket; and, further, that the court separate the action against the Oak Leaf Creamery Company on the indorsement of the note from the action against these defendants, and require plaintiff to set up his various causes of action as against them in separate and distinct counts, it being claimed that eight distinct causes of action are set up in the petition besides, and separate causes of action against each of the moving defendants. The defendants Williams moved that all the paragraphs mentioned in the foregoing motion be stricken from the petition, and also that the plaintiff be required to separate his petition in two causes of action, one in law and one in equity, and that they stand upon the docket of the court as separate causes of action. These motions were submitted to the court, and it ordered that plaintiff " separate each of his distinct and separate causes of action sued on, and present each of said causes of action in cases in his favor against the respective defendants as defendants." From this ruling the plaintiff appeals.— *Affirmed* as to J. E. Hubbell and Anna Williams, and as to the other defendants *reversed.*

*Wm. S. Hart,* for appellant.

*H. H. Stillwell* and *A. G. Stewart,* for appellees.

LADD, J.— The action is against seven defendants, and the order of court required plaintiff to "separate each of his distinct and separate causes of action sued on, and present each of said causes of action in cases in his favor against the respective defendants as defendants." This is the only ruling on the several motions, and it is not sufficiently explicit to indicate clearly the defects sought to be remedied, and, to determine whether the order was erroneous, it is essential to inquire if there was any misjoinder of causes of action or of parties. The action is based on a promissory note executed by one of the corporations defendant to the other, and indorsed by the latter to plaintiff. Section 3465 of the Code provides that "where two or more persons are bound by contract or by judgment, decree or statute, whether jointly only, or jointly and severally, or severally only, including the parties to negotiable paper, common orders and checks, and sureties on the same or separate instruments, or by any liability growing out of the same, the action thereon may, at the plaintiff's option, be brought against any or all of them." Corporations are included in the word "persons," as used in this statute, for the circumstances in which they are placed are identical with those of natural persons (section 48, paragraph 13, Code; *Stewart v. Waterloo Turn Verein,* 71 Iowa, 226), and, as the maker and indorser of a note may be joined as defendants in a suit thereon (*Stout v. Noteman,* 30 Iowa, 414), there was no error in suing these corporations in the same action.

1. NEGOTIABLE INSTRUMENTS: joint and several liability.

The petition also alleged that W. W. Hubbell was president and G. L. Hubbell secretary and manager of each of these corporations, and that, as such officers, they had withdrawn money from the funds or assets of each corporation subsequent to the execution and indorsement of said note, and paid out and distributed the same among the officers and stockholders of each corporation, well knowing that in so

2. CORPORATIONS: malfeasance of officers: personal liability.

doing they would render such corporation insolvent, and that such was the effect produced thereby. Conceding these allegations to be true, as we must in passing on the court's order, the conduct of the officers rendered them personally liable for all existing debts of the corporation; for section 1621 of the Code declares that " if the directors or other officers or agents of any corporation shall declare and pay any dividend when such corporation is known by them to be insolvent, or any dividend the payment of, which would render it insolvent, or which would diminish the amount of its capital stock, all directors, officers or agents knowingly consenting thereto shall be jointly and severally liable for all the debts of such corporation then existing, but dividends made in good faith before knowledge of the occurring of losses shall not come within the provisions of this section."

For violating this statute in the manner alleged, the officers or agents of the corporation are made absolutely liable for the existing debts. Its manifest object is to enforce diligence and fidelity on the part of the corporate officers, and to afford a prompt and efficient remedy to creditors who may have been injuriously affected by the malfeasance of such officers. The liability so created is not secondary or contingent, but primary, and it is not essential to recovery against them that the assets of the corporation be first exhausted, or even that its liability be first adjudicated. *M. I. Wilcox Cordage & S. Co. v. Mosher,* 114 Mich. 64 (72 N. W. 117) ; *Patterson v. Minnesota Mfg. Co.,* 41 Minn. 84 (42 N. W. 926, 4 L. R. A. 745, 16 Am. St. Rep. 676). By knowingly consenting to the diversion of the corporate funds, so as to render the corporation insolvent, if they so did, these officers became jointly and severally liable for the payment of the debt evidenced by this note, and therefore, under the explicit sanction of the statute first quoted, might be made parties defendant. The manifest design of the law is to avoid a multiplicity of suits by authorizing one action against all who are liable for the payment of a specific indebtedness,

regardless of whether the same has been created by statute or contract. The liability of the officers depended on the existence of the indebtedness against the companies at the time of the alleged misfeasance, and, in the determination of this issue, as well as the extent of the indebtedness, the corporations, independent of statute, were proper parties. Only a money judgment was demanded against these defendants. While the petition alleged that money and assets of the company had been distributed as dividends by the officers and the books destroyed, no accounting was prayed. The action, in so far as against the corporations and W. W. and G. L. Hubbell, was purely legal, and should be prosecuted on the law side of the calendar.

II. The petition proceeds further, and, in effect, alleges that the corporations have ceased to exist, in that the above-named officers had not acted as such since 1897, that

**3. DORMANT CORPORATIONS: assets: trust fund.** they then destroyed or concealed the books of each to avoid personal liability; that no business has been transacted since by either corporation, no officers elected, no records kept, no accounting made of the property or assets of either corporation, and each has been treated by its officers and stockholders as though it had ceased to exist during the five years preceding the filing of the petition; and, further, that the Waukon Excelsior Creamery Company was the owner of a certain tract of land at the time of the execution of the note which it has never transferred, and that the same is in the possession of the defendant Daniel Williams, whose only claim thereto is by virtue of having acquired all the stock of said company. The prayer is that the judgment obtained be established as a lien against this property. Anna Williams is made a party defendant because of being the wife of Daniel Williams. From this it is manifest that the pleader's design was to reach the property of this corporation whose activities had ceased in order to enforce the corporate debt against it. Without officers in control of its property, the corpora-

tion as such was not in a situation to satisfy any judgment which might be recovered. Its property was in the possession of Williams, but, according to all modern authorities, impressed with a trust in favor of the creditors of the corporation. *Muscatine Turn Verein v. Funck,* 18 Iowa, 469; *Nevitt v. Bank of Port Gibson,* 6 S. & M. (Miss) 513 (see Chancellor Kent's argument); *Hightower v. Thornton,* 8 Ga. 486 (52 Am. Dec. 412); *Pahquioque Bank v. Bethel Bank,* 36 Conn. 325 (4 Am. Rep. 80); *City Ins. Co. v. Commercial Bank,* 68 Ill. 348; 10 Cyc. 1320. Though the corporation had become dormant, its assets remained a trust fund for the payment of its debts against which a lien for that purpose might be established. Ordinarily a judgment must be obtained before proceeding to subject property to the payment of the debt. But, whenever the creditor has a trust in his favor, he is not required to exhaust his remedies at law before demanding the enforcement of the trust. *Ellis v. Pullman,* 95 Ga. 445 (22 S. E. 568); *Patterson v. Wyomissing Mfg. Co.,* 40 Pa. 117. But such is not the relief sought.

All the petition prays is that the judgment when obtained be established against real estate belonging to the corporation. This involved no equitable principle whatever for upon the required finding in favor of the plaintiff the statute declared that the judgment should become a lien on the real estate of the company. *Loan v. Hiney,* 53 Iowa, 89. The thought of the pleader seems to have been that as Williams was sole owner of the stock of the dormant corporation, and was in possession of its land, he ought to be made party defendant, and afforded an opportunity to contest the existence of the indebtedness against the Waukon Excelsior Creamery Company. Whether he was a proper party is not raised by the motions filed. The issue as to him is identical with that raised against the company whose stock he is alleged to own, and, as no equitable relief is sought

*4. SAME: form of action: misjoinder.*

there was no misjoinder of causes of action.   See section 3545, Code.

No cause of action is stated against J. E. Hubbell or Anna Williams, and, as to them, the order of the court will not be disturbed.   As to the other defendants, the ruling was erroneous, and the order must be *reversed*.