D. W. BATES, Superintendent of Banking, Receiver, Appellant, v. HESTER MCCONNELL BROOKS et al., Appellees.

No. 43661.

JANUARY 12, 1937.

H. F. Kuhlemeier, Mohland, Kuhlemeier, Fischer & Cray, and Edw. L. O'Connor, Attorney General, for appellant.

Clark, Hale & Plock and Ben P. Poor, for appellees.

KINTZINGER, J.—This is an action at law commenced by the receiver of the First Iowa State Trust & Savings Bank against the defendant stockholders and representatives of stockholders in the S. R. & I. C. McConnell Company, hereinafter referred to as the McConnell Company, a corporation which had been placed in the hands of a receiver upon a prior application of the plaintiff herein.

The principal creditor of the McConnell Company was the First Iowa State Trust & Savings Bank, whose claim had been reduced to judgment against the McConnell Company for $61,076, and comprised about ninety per cent of the indebtedness of the company. This bank was also in the hands of a receiver, who commenced this action to recover a judgment against the defendants, for the bank and all other creditors similarly situated, because of the wrongful payment of dividends to the said defendants out of the corporation funds, to the detriment of its creditors.

The fact that the receivership was not a liquidating receivership might naturally imply that it was not then insolvent. If the receivership had not been applied for, plaintiff might have had an execution issue under its judgment and levied upon the corporation property.

The record shows that after payment of the dividends complained of, the assets of the corporation, as estimated by competent accountants, greatly exceeded its indebtedness. Appellees, therefore, contend that sufficient funds to satisfy appellant's claim could have been realized from the sale of such assets, and plaintiff would not have been injured by the payment of the dividends complained of. Such dividends were paid each year

during the five years preceding and including September, 1931. During all of that time there was no surplus or profits from which dividends could lawfully be paid. However, the evidence introduced shows the following assets, liabilities and net worth of the company during that period:

| Date | Assets | Liabilities | Net Worth |
|---|---|---|---|
| June 30, '27 | $281,124.28 | $ 53,461.27 | $227,663.01 |
| June 30, '28 | 310,129.77 | 103,674.46 | 226,455.31 |
| June 30, '29 | 244,036.97 | 51,546.01 | 192,490.96 |
| June 30, '30 | 240,840.43 | 62,786.05 | 178,054.38 |
| June 30, '31 | 215,874.56 | 75,942.49 | 139,932.07 |
| June 30, '32 | 185,004.31 | 72,471.15 | 112,533.16 |

The inventoried values of the properties were determined at cost or market value, depending upon which was the lower. No dividends were paid after September, 1931. The evidence, therefore, fails to show that the McConnell Company was insolvent when any of the dividends were paid, although its capital stock was greatly impaired.

The dividends paid to the various defendant stockholders during the five years preceding September, 1931, amounted in the aggregate to $34,215, for which appellant asks for a judgment against the various defendant stockholders for the amounts paid to each. The evidence, however, fails to show that the defendants acted in bad faith or knew the dividends received by them were wrongfully paid.

The foregoing constitutes substantially all the evidence introduced. At the conclusion thereof, the lower court sustained defendants' motion for a directed verdict upon substantially the following grounds:

That the evidence fails to show that any dividends received by the stockholders were fraudulently received by them or were received with any knowledge on their part of the wrongful diversion of funds; that the corporation was solvent at all times when such dividends were paid, and that plaintiff suffered no loss or injury thereby. Defendants' motion was sustained and plaintiff appeals.

The case was tried as a law action, and after all of the evidence was introduced before the jury, and after arguments had been made upon appellees' motion for a directed verdict, and after the court had announced its contemplated ruling thereon,

appellant moved the court to transfer the case to equity. The court overruled this motion. No appeal, however, was taken from this ruling of the court, and no assignment of error is alleged as a ground for a reversal thereon. This case must, therefore, be considered an action at law.

The only errors assigned for a reversal are the following:

I. That the court erred in sustaining defendants' motion for a directed verdict, and

II. That the court erred in refusing to admit certain evidence to show the amount of claims existing against the receivership of the McConnell Company.

■■■ I. Appellant contends that the lower court erred in directing a verdict for the defendants because the evidence shows that the capital stock of the company had been greatly reduced; that dividends had been wrongfully paid to stockholders out of the assets of the corporation, and not out of its profits; appellant's principal contention being that where dividends are wrongfully paid out of the capital stock or assets of the corporation and not out of its surplus or earnings, the stockholders receiving such dividends are personally liable to the creditors of the corporation, and that such stockholders are personally liable therefor. Appellant contends that such liability arises (1) under the statute, and (2) under the "trust fund" doctrine of the common law.

(1) Are defendant stockholders liable under the statute for having received dividends wrongfully paid them by officers of the corporation, because of a wrongful diversion of its funds? Sections 8377 and 8378 of the Code of 1931 relating to the diversion of the funds of corporations provide as follows:

Section 8377. "Intentional fraud in failing to comply substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their means or their liabilities, * * * shall subject those guilty thereof to fine and imprisonment, * * *. Any person who has sustained injury from such fraud may also recover damages therefor against those guilty of participating in such fraud."

Section 8378. "The diversion of the funds of the corporation * * *, if any person be injured thereby, and the payment of dividends *which leaves insufficient funds to meet the liabilities thereof,* shall be such fraud as will subject those guilty thereof

to the penalties of the preceding section; and such dividends, or their equivalent, in the hands of stockholders, shall be subject to such liabilities. If the directors * * * shall declare and pay any dividend when such corporation is known by them to be insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, all directors, officers, or agents knowingly consenting thereto shall be jointly and severally liable for all the debts of such corporation then existing, but dividends made in good faith before knowledge of the occurring of losses shall not come within the provisions of this section.'' (Italics ours.)

These statutes create a liability to defrauded creditors *who have been injured* by the acts of the corporation. If a corporation is perfectly solvent when a person becomes a creditor, they create no liability, although the corporation may thereafter become insolvent. Miller v. Bradish, 69 Iowa 278, 28 N. W. 594; Benge Bros. v. Eppard, 110 Iowa 86, 81 N. W. 183.

In order to establish a liability against the stockholders, it must appear that the plaintiff both sustained an injury as a result of the acts complained of, and that the dividends paid were not received in good faith by such stockholders. Under the authority of the foregoing cases, no injury results if the corporation had sufficient assets on hand to meet its indebtedness.

These statutes are, in effect, substantially identical with section 1072 of the Code of 1873. Under that statute this court, in Miller v. Bradish, 69 Iowa 278, 28 N. W. 594, and Benge Bros. v. Eppard, 110 Iowa 86, 81 N. W. 183, held that capital stock is not a liability like other debts of the corporation, and, therefore, cannot be considered in determining the solvency thereof. The court there also held that there is no liability of the stockholder receiving dividends without knowledge of the wrongful payment thereof, unless the payment of such dividends results in the insolvency of the corporation. In other words, if there are sufficient funds and assets in the corporation to pay all corporate debts, there is no liability on the part of the stockholders receiving such dividends. It is not sufficient to make the stockholder liable by showing that insolvency occurred later. The insolvency of the corporation must exist at the time the dividends are declared.

Without reciting in detail the evidence of the financial

standing of the corporation at the time all of said dividends were paid, it is sufficient to say that the evidence clearly shows that if the capital stock is not taken into consideration in determining the indebtedness of the company, it was perfectly solvent at all times when the dividends were paid, because the funds and assets of the corporation were at all times sufficient to more than meet its debts. The evidence in this case also fails to show that the defendant stockholders had any knowledge of any illegality in the payment or receipt of the dividends in question.

In Miller v. Bradish, 69 Iowa 278, loc. cit. 281, 28 N. W. 594, 596, this court said:

"When the dividend was declared, the value of the assets, funds and resources of the corporation was $156,904.65, and the liabilities were $56,065.23. The capital stock was $106,860, and a dividend of ten per cent on the capital stock was declared, amounting to $10,686. It will be observed that the statute declares that the 'payment of dividends which leave insufficient funds to meet the liabilities of the corporation' shall be deemed a fraud. It will be also observed that the indebtedness *and the capital stock* exceed the assets of the corporation, and counsel for the appellant contend that the capital stock is a liability, and therefore the dividend was unlawfully declared and paid. Counsel for the appellee contend that the liabilities of the corporation contemplated by the statute are the indebtedness other than the capital stock. *We incline to think that the capital stock, in one sense, is a liability* of the corporation, and *yet it is not a debt.* * * * The object of the statute is the protection of creditors other than holders of stock. If the whole capital stock is returned to the stockholders in the form of dividends, a creditor has no right to complain *if there remain sufficient funds belonging to the corporation to pay him.* The word 'liability,' as used in the statute, should be construed to mean existing indebtedness at the time the dividend is declared, the payment of which could be enforced. * * * the word 'liability' is used as synonymous with 'indebtedness.' * * *

"*It may be that, but for the payment of the dividends, insolvency would not have occurred; but this is immaterial, if the corporation had sufficient assets to pay all its debts at the time the dividends were paid;* * * *. We deem it unnecessary to set out the evidence, deeming it sufficient to say that when the divi-

dends were declared the corporation had personal property more than sufficient to pay its debts." (Italics ours.)

In Benge Bros. v. Eppard, 110 Iowa 86, loc. cit. 88, 81 N. W. 183, 184, this court also said:

"If the plaintiff was a creditor, but the corporation had sufficient property remaining at the time of the diversion to pay all debts, there was no injury, in a legal sense, for the reason that, as to creditors, a corporation, like an individual, may give away or make such disposition of its property as it pleases, so long as it retains sufficient to pay its debts. There can be no fraud as against a creditor unless he be prejudiced in some manner by the action complained of. * * * for about a year after the alleged diversion the corporation was perfectly solvent."

Likewise, section 8378 in effect provides that if any person be injured by "the payment of dividends *which leaves insufficient funds to meet the liabilities thereof,* * * * *such dividends,* or their equivalent, in the hands of stockholders, *shall be subject to such liabilities.* * * * but dividends made in good faith before knowledge of the occurring of losses shall not come within the provisions of this section."

We are impelled to hold that the decision on this branch of the case is controlled by Miller v. Bradish, 69 Iowa 278, 28 N. W. 594, and Benge Bros. v. Eppard, 110 Iowa 86, 81 N. W. 183. It necessarily follows that there is no statutory liability for the acts complained of herein.

(2) Appellant also contends that he has a right to recover under the common law upon the theory that the capital of a corporation is a "trust fund" for the payment of the debts of the corporation, and that because the defendant stockholders have received dividends wrongfully paid out of the capital of the corporation, appellant has a right to recover them.

The authorities are not harmonious upon the question as to whether or not dividends wrongfully paid to its stockholders out of the capital stock or assets of a corporation can be recovered under the common law, by the corporation, its receiver, or its creditors, under what is known as the "trust fund" doctrine. In many cases where dividends have been wrongfully declared and paid to stockholders, a recovery has been allowed under the "trust fund" doctrine.

The theory of this doctrine is that the capital stock of a corporation is a fund set apart for the payment of the company's debts, and is considered a substitute for the personal liability existing in private copartnerships; and that under this doctrine, when debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon the company's debts until they are satisfied; that the creditors have a lien upon it in equity, and if diverted, they may follow the fund as far as it can be traced and subject it to the payment of their claims, except as against bona fide assignees. Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220.

Under this doctrine a recovery has been allowed generally in equitable proceedings against stockholders receiving dividends unlawfully declared or paid, upon the theory that the capital stock of a corporation is regarded as a trust fund for the payment of its debts and liabilities, and as such may be followed by the creditors into the hands of persons receiving them with notice of the trust. Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Gratz v. Redd, 4 B. Mon. (Ky.) 178; Dudley v. Price, 10 B. Mon. (Ky.) 84; Reid v. Owensboro Sav. Bank, 141 Ky. 444, 132 S. W. 1026; American Steel & Wire Co. v. Eddy, 130 Mich. 266, 89 N. W. 952; Mackall v. Pocock, 136 Minn. 8, 161 N. W. 228, L. R. A. 1917C, 390; Kimbrough v. Davies, 104 Miss. 722, 61 So. 697; Shields v. Hobart, 172 Mo. 491, 72 S. W. 669, 95 Am. St. Rep. 529; Williams v. Boice, 38 N. J. Eq. 364; Bartlett v. Smith, 162 Md. 478, 160 Atl. 440, 161 Atl. 509.

In discussing the "trust fund" doctrine, the Supreme Court of Minnesota, in Hospes v. Northwestern Mfg. & Car Co., 48 Minn. 174, 15 L. R. A. 470, 50 N. W. 1117, 1119, 31 Am. St. Rep. 637, said:

"This 'trust fund' doctrine, * * * was invented by Justice Story in Wood v. Dummer, [Fed. Cas. No. 17,944] 3 Mason 308, which called for no such invention, the fact in that case being that a bank divided up two-thirds of its capital among its stockholders without providing funds sufficient to pay its outstanding billholders. Upon old and familiar principles this was a fraud on creditors. Evidently all that the eminent jurist meant by the doctrine was that corporate property must be first appropriated to the payment of the debts of the company before there can be any distribution of it among stockholders,—a proposition that is

sound upon the plainest principles of common honesty. In Fogg v. Blair, 133 U. S. [534] 541, 10 S. Ct. 338 [33 L. Ed. 721], it is said that this is all the doctrine means. * * * Corporate property is not held in trust, in any proper sense of the term. A trust implies two estates * * *, one equitable and one legal; one person, as trustee, holding the legal title, while another, as the cestui que trust, has the beneficial interest. Absolute control and power of disposition are inconsistent with the idea of a trust. The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it, and sell and dispose of it, the same as a natural person.''

Many other cases, however, hold that the doctrine does not apply where at the time the dividends were wrongfully paid, the corporation was solvent and a going concern. The question of its solvency was determined upon the sufficiency of the assets of the corporation to pay its indebtedness at the time the dividend was declared or paid. McDonald v. Williams, 174 U. W. 397, 43 L. Ed. 1022, 19 S. Ct. 743; Ratcliff v. Clendenin, 232 Fed. 61, 146 C. C. A. 253; New Hampshire Savings Bank v. Richey, 121 Fed. 956, 58 C. C. A. 294; Great Western Min. & Mfg. Co. v. Harris, 128 Fed. 321, 63 C. C. A. 51; Id., 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163; Bartlett v. Smith, 162 Md. 478, 160 Atl. 440, 161 Atl. 509.

The rule now prevailing in the federal and the majority of the state courts on this doctrine is well expressed in McDonald v. Williams, 174 U. S. 397, 19 S. Ct. 743, 744, 43 L. Ed. 1022, where the court said:

''The complainant bases his right to recover in this suit upon the theory that the capital of the corporation was a trust fund for the payment of creditors entitled to a portion thereof; and, having been paid in the way of dividends to the shareholders, that portion can be recovered back in an action of this kind for the purpose of paying the debts of the corporation. * * * We think the theory of a trust fund has no application to a case of this kind. When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation. No general creditor has any lien upon the fund under such circumstances, and the right of the corporation to deal with its property is abso-

lute so long as it does not violate its charter or the law applicable to such corporation. * * * These cases * * * show there is no well-defined lien of creditors upon the capital of a corporation while the latter is a solvent and going concern. * * * The bank being solvent, although it paid its dividends out of capital, did not pay them out of a trust fund. Upon the subsequent insolvency of the bank and the appointment of a receiver, an action could not be brought by the latter to recover the dividends thus paid *on the theory that they were paid from a trust fund,* and therefore were liable to be recovered back. It is contended on the part of complainant, however, that if the assets of the bank are impressed with a trust in favor of its creditors when it is insolvent, they must be impressed with the same trust when it is solvent; that the mere fact that the value of the assets of the corporation has sunk below the amount of its debts, although as yet unknown to anybody, cannot possibly make a new contract between the corporation and its creditors. In case of insolvency, however, the recovery of the money paid in the ordinary way without condition is allowed, not on the ground of contract to repay, *but because the money thus paid was in equity the money of the creditor * * *.* The assets of the bank while it is solvent may clearly not be impressed with a trust in favor of creditors, and yet that trust may be created by the very fact of the insolvency, and the trust enforced by a receiver as the representative of all the creditors. * * * Insolvency is a most important and material fact, not only with individuals, but with corporations, and with the latter, as with the former, the mere fact of its existence may change radically and materially its rights and obligations. Where there is no statute providing what particular act shall be evidence of insolvency or bankruptcy, it may be and it sometimes is quite difficult to determine the fact of its existence at any particular period of time. *Although no trust exists while the corporation is solvent, the fact which creates the trust is the insolvency,* and when that fact is established, at that instant the trust arises. To prove the instant of creation may be almost impossible, and yet its existence at some time may very easily be proved. What the precise nature and extent of the trust is, even in such case, may be somewhat difficult to accurately define, but it may be admitted in some form and to some extent to exist in a case of insolvency. Hence it must be admitted that the law does create a distinction between solvency and insolvency, and that

from the moment when the latter condition is established the legality of acts thereafter performed will be decided by very different principles than in a case of solvency. * * * *The fact of insolvency must be proved in order to show the act was one committed in contemplation thereof.* Without reference to the statute, therefore, we think the right to recover the dividend paid while the bank was solvent would not exist. * * * Has a shareholder withdrawn or permitted to be withdrawn in the form of a dividend any portion of the capital of the bank when he has simply and in good faith received a dividend declared by a board of directors of which he was not a member, and which dividend he honestly supposed was declared only out of profits? Does he in such case, within the meaning of the statute, withdraw or permit to be withdrawn a portion of the capital? The law prohibits the making of a dividend by a national bank from its capital or to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts. The fact of the declaration of a dividend is in effect the assertion by the board of directors that the dividend is made out of profits. Believing that the dividend is thus made, the shareholder in good faith receives his portion of it. Can it be said that in thus doing he withdraws or permits to be withdrawn any portion of the capital of the corporation? We think he does not withdraw it by the mere reception of his proportionate part of the dividend. * * * We think this language implies some positive or affirmative act on the part of the shareholder by which he knowingly withdraws the capital or some portion thereof, or with knowledge permits some act which results in the withdrawal, and which might not have been so withdrawn without his action. The permitting to be withdrawn cannot be founded upon the simple receipt of a dividend under the facts stated above. * * * Ought it to be said that he withdraws or permits the withdrawal by ignorantly, yet in entire good faith, receiving his proportionate part of the dividend? Is each shareholder an absolute insurer that dividends are paid out of profits? Must he employ experts to examine the books of the bank previous to receiving each dividend? Few shareholders could make such examination themselves. * * * The shareholder takes the fact that a dividend has been declared as an assurance that it was declared out of profits, and not out of capital.'' (Italics ours.)

Appellant relies upon a number of Iowa cases in support of his contention that under the "trust fund" doctrine, dividends wrongfully paid to stockholders out of the funds and assets of the corporation may be recovered and applied to the payment of the debts of the corporation, regardless of the good faith of those receiving them, and regardless of the solvency of the corporation. The cases chiefly relied upon are Luedecke v. Des Moines Cabinet Co., 140 Iowa 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616; Hoyt v. Hampe, 206 Iowa 206, 214 N. W. 718, 220 N. W. 45; Swartley v. Creamery Co., 135 Iowa 573, 113 N. W. 496, and others of like import. An examination of these cases will show that the corporation was stripped of all of its assets and property by offending officers of the company, and wrongfully transferred to others with knowledge of the facts concerned in the transactions. They were all commenced in equity for a recovery of the property, and the establishment of a lien against it for the benefit of creditors, and are not authority for the contention that a money judgment from such officers can be recovered in an action at law.

The instant case was commenced and tried in law. The cases cited by appellant simply hold that the creditors of a corporation do not have a specific lien upon the capital stock and property of the corporation for the payment of its debts, but that the creditors may, in an equitable action, have the sale of the property set aside, and an *equitable* lien established against the property fraudulently disposed of upon the same principles under which an ordinary individual can have any other wrongful and fraudulent transfer of property set aside when made to hinder and delay creditors.

In Luedecke v. Des Moines Cabinet Company, 140 Iowa 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616, the court discusses the trust fund doctrine and adheres to the rule announced in McDonald v. Williams, 174 U. S. 397, 43 L. Ed. 1022, 19 S. Ct. 743, herein above referred to. Therein this court says, loc. cit. 227:

"It has been broadly asserted by courts of the highest standing that the capital stock of a corporation is a fund for the payment of its debts. * * * This modern or so-called American doctrine has never been recognized in England, *nor does it exist at common law*; and, while at one time quite generally adopted in this country, it is now believed to be unsupported * * * by any considerable number of courts. Indeed the court which first

announced it has largely receded from its former position, and now says that no trust in its true sense exists; that all that was intended by the previous expressions was to announce the existence of an *equitable right*, which will be enforced whenever a court of *equity*, at the instance of a proper party, has taken possession of its assets. 'It is never understood that there is a specific lien or a direct trust.' See Hollins v. Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113. We have recently gone over this matter in the case of State Trust Co. v. Turner, 111 Iowa 664, 82 N. W. 1029, 53 L. R. A. 136, and have repudiated the trust-fund doctrine as broadly announced in some of the earlier cases in this country." (Italics ours.)

As shown by the facts in this case, the assets of the company at all times largely exceeded its debts. It must, therefore, be held that the McConnell Company was in a solvent condition when all of the dividends complained of were received by the defendant stockholders.

This being an action at law, it was incumbent upon the plaintiff to prove its damages by showing the extent to which it was injured. As the corporation was solvent at all times such dividends were paid, and for a long time thereafter, it necessarily follows that no damages have been established. We do not mean to hold that under proper facts, an action in equity cannot be maintained to impress funds wrongfully diverted from a corporation with an equitable lien, for the payment of its indebtedness. Such an action, however, calls for equitable relief and should be commenced in equity.

The case of State v. Associated Packing Co., 210 Iowa 754, 762, 227 N. W. 627, 631, apparently lends some color to the existence of the "trust fund doctrine" in this State. An examination of that case, however, will disclose that the facts were entirely different from those in the case at bar. In that case the action was commenced by the receiver of an insolvent corporation for the purpose of making an assessment against certain stock subscribers for their unpaid stock subscription. The question of fraud was involved in that case, and therein this court said: "While it is true that the trust fund doctrine had its origin largely in situations arising out of the insolvency of corporations, yet it has been found advisable to extend the doctrine so as to apply in cases such as the one at bar." It is our conclusion,

however, that the case of State v. Associated Packing Co., 210 Iowa 754, 227 N. W. 627, is not controlling of the case at bar.

The relief sought herein upon the theory of defendants' liability under the common law, is similar to the remedy afforded by section 8378 of the Code of 1931, and we find no sufficient distinction between the relief afforded by statute and that contemplated under the "trust fund" doctrine, to warrant a different conclusion from the rule announced in Miller v. Bradish, 69 Iowa 278, 28 N. W. 594, and Benge Bros. v. Eppard, 110 Iowa 86, 81 N. W. 183, and the modern rule expressed in McDonald v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022, holding that the trust fund doctrine does not apply when the corporation was not insolvent at the time the dividends were paid. We are, therefore, inclined to reach the same conclusion here. This being an action at law and no definite damages having been established, no judgment can be entered against the defendants herein. We find no error in the ruling of the lower court thereon.

II. Appellant also contends that the court erred in refusing to admit "en masse" the records relating to the existence of claims against the receivership of the McConnell Company. Plaintiff in the lower court offers Exhibit 208, being the claims filed with the clerk of the court in receivership of the McConnell Company, and also all the records in Cause No. 3975, pending in the district court of Des Moines County, Iowa, with respect to the receivership of the S. R. & I. C. McConnell Company, for the purpose of showing that the claims of creditors against the company and against the receiver have not been passed upon or adjudicated. This was objected to as being incompetent, irrelevant and immaterial, not pertinent to any issue in the case, and no showing that any of these claims have been allowed.

The lower court said:

"En masse, I would be inclined to sustain the objection, but, if there are papers or records that ought to go in, I will be very glad to admit them. The objection will have to be sustained to this offer."

The record upon this error shows that the lower court indicated its willingness to receive specific evidence of the records if competent and proper. The evidence was offered en masse with no attempt to separate the competent and material from the in-

competent and immaterial matters therein. It necessarily included many items entirely foreign to the consideration of this case. Included in that record in the receivership there were, no doubt, applications and petitions relating to the conduct of the business and applications to enter into certain contracts for repairs or the purchase of material, all of which would be immaterial and incompetent.

Appellant made no further attempt to introduce or offer any parts of the evidence in detail. We think the ruling of the lower court was right, and that if appellant desired to introduce any competent evidence, it should have been offered separately. We find no error in the ruling of the court on this question.

As an additional reason in support of the lower court's action, appellees suggest that the proper party to commence this action was the receiver of the McConnell Company, and as it was not so prosecuted, and as no authority of court was obtained for its prosecution by the plaintiff, it was improperly commenced. In view, however, of the foregoing discussion and the conclusion reached therein, it is unnecessary to consider this question.

For the reasons hereinabove expressed, we are constrained to hold that the judgment and ruling of the lower court was right, and the same is hereby affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, DONEGAN, PARSONS, HAMILTON, STIGER, and SAGER, JJ., concur.