FRED H. OLSON, appellant, v. NORWEGIAN MUTUAL INSURANCE ASSOCIATION et al., appellees.

No. 51961.

(Reported in 140 N.W.2d 91)

FEBRUARY 8, 1966.

Strand & Kiener, of Decorah, for appellant.

Miller, Pearson & Gloe, of Decorah, and Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellees.

MOORE, J.—This is an action at law against defendant insurance companies which had issued combined fire and wind-

storm policies to plaintiff's grantor on property, subsequently acquired by plaintiff, to recover for loss caused by windstorm. Plaintiff alleges the policies were extended beyond their expiration date by oral agreement or in the alternative defendants are estopped to deny there was insurance in force. At the close of plaintiff's evidence the trial court directed a verdict for defendants and entered judgment thereon. Plaintiff has appealed. We affirm.

Plaintiff contends the evidence created a jury question on existence of an oral agreement of insurance or an estoppel against defendants to deny coverage. He also assigns error in rulings on evidence.

On May 9, 1957, defendants issued combined fire and windstorm insurance policies to Walter Strand on two sets of farm buildings. The policies bore numbers 96-1142 and 96-1143 and were for a five-year term from May 9, 1957 to May 9, 1962. The original policies could not be located but by stipulation the form thereof was received in evidence.

In the summer of 1959 plaintiff purchased from Strand the farm, including the two insured sets of buildings, and took possession in March 1960.

Plaintiff testified on direct examination as follows regarding a conversation with Hilman Sersland, then secretary of defendant Norwegian Mutual Insurance Association and defendants' agent.

"Q. Mr. Olson, did you have a conversation in the spring of 1960, with Mr. Sersland, in regard to this insurance? A. I did, yes.

"Q. And about when was that? A. It was in the spring; I suppose in April. Along in there, sometime. I wouldn't say exactly the date, because I wouldn't know.

"Q. April of 1960? A. Yes.

"Q. And do you recall what was said, at that time? A. Yes, I do.

"Q. And what was the conversation that you had with Mr. Sersland at that time? A. Well, I just asked him about—I told him I was the new owner of the Strand place out here. * * * I just told him that I was the owner of the Strand place; and

mentioned something about the insurance. And he said, 'Well, I'll look after that.' Which he did. He notified me when the premiums were due and so on and so forth.

"Q. And was that portion the extent of your conversation? A. Yes it was, at that time."

Following this conversation Sersland had plaintiff's name endorsed on the Strand policies and plaintiff was billed for the premiums on each policy as they became due in the spring of 1960 and 61. Two of his checks refer to the policies by number and have written on the face "insurance on Walt Strand farm."

In the fall of 1961 plaintiff had a small loss and contacted Sersland. He testified: "I had the conversation with Mr. Sersland in the fall of 1961, because there was a little wind damage on the property I bought from Walter Strand. Mr. Sersland came out and looked at it. The claim I put in was paid and I was satisfied with the adjustment. I did not have a conversation with Mr. Sersland about my insurance coverage. We just talked about the insurance, rode out together to the farm on highway 52, and as to amount, talked about the coverage. He said he would let me know, like he had been."

On redirect examination plaintiff testified: "I only received a fourth grade education. I testified on re-cross-examination that my claim was based on a policy or policies originally issued to Walter Strand. I have never seen those policies. On redirect, I said as far as I understood the agreement between myself and the insurance companies, my policies embodied the same terms as policy between Walter Strand and the companies."

The policies originally issued to Strand expired May 9, 1962. No notice thereof was given to plaintiff. On June 17, 1962, plaintiff's property sustained substantial windstorm damage. Upon denial of his claim for that loss plaintiff brought this action. Defendants' primary contention is that no insurance was in force after May 9, 1962.

I. Plaintiff's pleadings like his testimony on redirect examination fail to clearly state his claim of an oral agreement for his insurance. In oral argument to this court plaintiff's counsel took the position an implied oral agreement for a new five-year

term of insurance resulted from plaintiff's conversation with Sersland in April 1960.

■ In Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 125 N.W.2d 758, on which plaintiff heavily relies, we recognize that an oral agreement by an agent to keep insurance in force until notified otherwise by the insured followed by custom of defendant's agent of keeping insurance in force may result in an estoppel against the insurance company but we have no such facts here.

Plaintiff pleads an oral agreement. He has the burden to prove the terms thereof. Rule 344(f)5, Rules of Civil Procedure.

■ Giving plaintiff's evidence the most favorable construction it will reasonably bear, as required under rule 344(f)2, we find no evidence on which a jury finding of the claimed oral agreement could be based. Obviously all Sersland had in mind was the transfer of Strand's policies to plaintiff which he did and notified plaintiff when the premiums were due. Plaintiff received no policies nor does he claim he ever expected to do so. The record indicates the Strand policies were in the hands of a mortgagee. Apparently plaintiff's information concerning the insurance policies and coverage came originally from Strand.

II. Plaintiff in his written brief argues there was an oral renewal of his insurance. Again plaintiff's proof is lacking.

■ A binding contract of renewal must have all the essentials of a valid contract. There must be a meeting of the minds of the parties on all the essentials of the contract. 29 Am. Jur., Insurance, section 358; 44 C. J. S., Insurance, section 283.

Plaintiff's testimony regarding his conversations with Sersland falls far short of creating a jury question on his claim of an oral renewal.

III. Plaintiff's argument on the question of estoppel to deny coverage is meager and not supported by evidence making his position clear.

■ Equitable estoppel is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it. In Sanborn v. Maryland Casualty Co., 255 Iowa 1319, 1327–1329, 125 N.W.2d 758, 762–764, we cite and quote

736

our earlier cases and those from other jurisdictions which consider the principles of equitable estoppel including many involving insurance coverage. The discussion need not be repeated here. See also Laverty v. Hawkeye Security Ins. Co., 258 Iowa 717, 140 N.W.2d 83.

On cross-examination plaintiff testified: "I remember my deposition was taken October 26, 1964. In it I said that Hilman Sersland never actually told me he would mail notices to me, but rather I relied on the practice that had been carried out. I got a notice every time I sent the check and would get another notice and send the check. I also said in the deposition that I asked Mr. Sersland what coverage there was on different buildings, and there was nothing said specific about sending the notice of premiums due. Rather I relied on the insurance company's practice instead of any conversation had with Mr. Sersland."

The only practice of Sersland or the insurance companies shown by the record is that of mailing notice of premiums due. Plaintiff received such notices and paid accordingly. Plaintiff argues, however, he should have been given notice of the expiration date of the policies.

 Whether evidence of custom or usage of giving notice of expiration date and failure to give such notice would support plaintiff's claim of equitable estoppel need not be, nor is it, decided in this case. Plaintiff failed completely to establish any evidence of such a custom or usage by defendant insurance companies. A jury question on plaintiff's claim of estoppel was not created.

IV. Plaintiff called an officer of Norwegian Mutual Insurance Company who identified exhibits S and T as the companies' complete file on policies 96-1142 and 96-1143. He did not identify each of the many documents therein but did make reference to mortgage records, and correspondence with the Federal Land Bank of Omaha. Plaintiff then offered them as "group exhibits" to which defendants objected on the grounds the offer was in bulk, the files contained inadmissible material which would be subject to objection if offered separately and the exhibits were incompetent, irrelevant and immaterial. Plaintiff asserts the

trial court erred in sustaining the objection. He made no offer of proof.

■ The rule is well established the offer in bulk of several documents as one exhibit some parts of which are improper requires the exclusion of all upon a proper objection. Bates v. Brooks, 222 Iowa 1128, 1142, 270 N.W. 867, 874, 109 A. L. R. 1371; Vandell v. Roewe, 232 Iowa 896, 898, 6 N.W.2d 295, 296; Bill v. Farm Bureau Life Ins. Co., 254 Iowa 1215, 1223, 119 N.W.2d 768, 773.

■ The trial court's ruling was right. The record shows the files included some inadmissible documents. If plaintiff desired to introduce any competent evidence contained in exhibits S or T it should have been offered separately.

■ V. As we have pointed out, plaintiff on cross-examination admitted statements made in his deposition taken before trial. Plaintiff thereafter offered his entire deposition to which defendants objected as irrelevant, immaterial and incompetent. The trial court sustained the objection. Plaintiff made no offer of separate parts of his deposition. The trial court did not err in sustaining the objection.

Rule 145(a), Rules of Civil Procedure, provides: "(a) If a party offers only part of a deposition, his adversary may require him to offer all of it relevant to the portion offered; and any other party may offer other relevant parts."

Under the rule plaintiff's offer should have been limited to that part of the deposition relevant to the portion used by defendants for impeachment purposes.

■ Volume 23 Am. Jur.2d, Depositions and Discovery, section 108, page 436, states: "* * * where only a part of a deposition is used for impeachment, any party may introduce the other parts but only insofar as they are admissible under the applicable rules of evidence." See also 26A C. J. S., Depositions, section 91.

We are convinced no reversible error is shown.—Affirmed

All JUSTICES concur.