MAYER v. THE MUTUAL LIFE INS. CO. OF CHICAGO.

1. **Insurance:** CUSTOM OF NOTIFYING WHEN PREMIUMS BECOME DUE. If a life insurance company has been accustomed to notify a policy holder when his premiums become due, and has done nothing to apprise him of any change or abandonment of the custom, its conduct raises a reasonable expectation that such notice will be given and he may rely upon it in the case of any particular premium.

2. ——: CHANGE OF RESIDENCE: NOTIFICATION BY MAIL: FAILURE TO PAY. Where it has been the custom to notify by mail, and the insured informed an agent of the company of a change of residence, it is the duty of the company to send a notice to his changed address and a failure to pay the premium because such notice has not been given will not work a forfeiture of the policy.

3. ——: WHO IS AN AGENT: DUTY OF INSURED. A clerk employed in the office of the general agent of the company, who collected premiums and took risks, and had given the insured receipts for the payment of former premiums, countersigned by the general agent, is clothed with the insignia of agency; and the insured may rely upon his agreement that personal demand should be made for future payments.

4. ——: EFFECT OF AGENT'S CONDUCT: STRICT PERFORMANCE. If payment of former premiums has been received after they were due, and the insured is lead to believe by the conduct and declarations of the agent that strict performance with respect to time will not be insisted upon, the insured may infer from this a waiver of the time of payment and payment may be made after it is due, although the insured is then dead.

*Appeal from Clinton District Court.*

WEDNESDAY, JUNE 3.

ACTION for the recovery of one thousand dollars upon a policy of insurance on the life of Michael Mayer, who died on the 26th day of August, 1872. The premium upon the policy became due on the 22nd of August, and was unpaid at the time of his death. Upon this ground the defendant seeks to avoid liability. Jury trial. Verdict and judgment for plaintiff for one thousand dollars. Defendant appeals. The material facts are stated in the opinion.

*Walter I. Hayes, George B. Young, and J. T. McGuire,* for appellant.

*W. E. Leffingwell & Bro.,* for appellee.

DAY, J.—The policy bears date of the 22d day of November, 1869, and insures the life of Michael Mayer for the term of fifty-six years, in consideration of an annual premium to be paid to said company on or before, or within thirty days after the 22 of November. This policy amongst other conditions, contains the following:

"2. That this policy shall not take effect until the payment of the premium hereon has been made during the lifetime of the person whose life is hereby insured, or if any premium note given on account of this policy be not paid, with interest, on or before the date when due, then this policy shall cease and determine; and in every case in which this policy shall cease and determine, all payments thereon shall be forfeited to said company, and the company shall not be liable for the payment of the sum insured hereon, nor any part thereof, except as hereinafter provided."

"5. That if, after the payment of two or more full annual premiums on this policy, the same shall cease and determine, by default in the payment of any subsequent premium when due, yet, notwithstanding such default, this policy shall continue and hold good, subject to all the above conditions and

agreements, except as to further payments of premiums, for an equitable proportion of the amount originally insured, provided application for the same be made within thirty days after said premium was due and not paid."

The policy contains a provision that the annual premium may, by permission of the company, be paid semi-annually in advance with interest. Immediately after the policy was effected the parties, by agreement, changed the time of the payment of the premiums to quarter-annual payments, to be paid upon the same terms and conditions, and with the same force and effect as the semi-annual premiums mentioned in said policy. George Oatman was hired by Leadbetter, the general agent of the defendant at Clinton, as book-keeper and clerk, and received his pay from defendant.

He was instructed by Leadbetter to collect premiums and take insurance. He collected the last five premiums which were paid upon the policy in suit, and delivered receipts therefor, which he countersigned with the name of Leadbetter, the general agent. These five payments were made as follows: the one due May 22, was paid on the 13th day of June; that due August 22d, was paid August 25th; that due Nov. 22d was paid Nov. 28th; and those due Feb. 22d and May 22d, 1872, were paid when due. Two other receipts were in evidence, showing that the premium due 22d of Nov., 1870, was paid on the 24th of Nov., and that the one due 22d of February, 1871, was paid on the 13th of February. Oatman testified substantially as follows: " At the time I collected the money expressed in receipt No. 10, May 22d, 1872, Mayer said, 'I suppose my notices go to Clinton, as my policy is dated there, and I want it changed to Lyons.' I told him that was not necessary, as we had a complete record in the office, and when a policy holder changed his post office address, we noted it. I told him not to be uneasy, as I would be around to collect it. I did not do so, as I quit work the week after collecting said premium above mentioned."

The witness further testified that he never told any one connected with defendant that he had this conversation with Mayer, and that he made no note of the change of residence

in the register, but that the fact of such change was understood in the office.

It was also proved that the custom of defendant as to notifying policy holders at and around Clinton of the time premiums became due, was to send notices from the general office to Clinton, and from there to the policy holders. The notice for the August premium was sent to Mayer at Clinton, and being uncalled for, was returned.

The court gave the following instructions, which were excepted to, and the giving of which is assigned as error:

2. "The policy in suit was delivered at the city of Clinton, and that city, at the time of such delivery, it is admitted, was the residence and post office of the plaintiff and the deceased, and such residence was then noted on the books of defendant's agent at the said city of Clinton. If it was the custom of the agent of the defendant at Clinton to advise by letter through the post office or otherwise, parties insured at that agency, of the time when their premiums would become due, in order that they might be paid in season, and the policy thus preserved from forfeiture, and such had been the custom with respect to this particular policy, then the plaintiff, unless otherwise advised by the defendant, had the right to expect that the custom would be observed in regard to the payment due August 22d, 1872, and to be advised of such payment in season to make it. And if you find that the plaintiff and the deceased, previous to the 22d of August, had removed to the city of Lyons, in said county, and the deceased about the time of, or shortly after such removal, informed a clerk who was then in the office and in the employment of the agent at Clinton, and who previously collected premiums on this policy of the deceased, then this would be notice to defendant of this change of residence; and it would be the duty of the defendant to either address or send word to the plaintiff at Lyons, and a letter addressed in Clinton would not be sufficient; and if the failure to pay the premium at the time it was due, was owing to the fact that defendant had failed to give the deceased its usual and customary notice, then the non-payment of the premium at the time it was due, would not

work a forfeiture of the policy, or the right to recover on it."

"3.  If you find that the witness Oatman was employed in the office of the general agent at Clinton, and had been in the habit, with the knowledge and assent of such general agent, of collecting premiums on this particular policy, and had, by the said general agent, been permitted by the said agent to procure insurance risks, &c., and the said Oatman received from the deceased premiums several days after they had become due, without any objection, and, as though such payments had been made on the day of their maturity, and the payments as made were authorized by the defendant, without any objection communicated to the deceased or the plaintiff, then it may be fairly inferred that the said Oatman was acting with the concurrence of the defendant, and as its agent.  So, too, if before the maturity of the premium payable on the 22d of August, 1872, the said Oatman, while employed in the office of the said general agent, had informed the deceased that he would call at the residence or place of business of the deceased and collect such premium, and deceased depended on such call being personally made on him, this would excuse the deceased from going to such office and paying such premium the day that it was due, if, in addition to this promise on the part of the said Oatman, you find that he had at various times called upon and collected from the deceased previous premiums on said policy, with the authority to collect such premiums.  If, however, the said Oatman left the employment of the said general agent previous to the said 22d day of August aforesaid, and this was known to the deceased or to the plaintiff, then the plaintiff can claim no advantage from the promise or offer so made."

"5.  If you find that the premium due August 22d was offered to and refused by the defendant on the 26th of August, the defendant would be justified in then refusing it, unless you find from the other facts in the case that the defendant, by the declaration and conduct of its agent, had given the deceased or the plaintiff reasonable grounds to believe that it waived a strict performance with respect to time of payment,

and if you find that such declarations and conduct were such as would reasonably lead the deceased or plaintiff to believe that these strict conditions would be waived and not be insisted on, then the offer to pay would be in time, although the assured was then dead."

These instructions, we think, are right. The vast increase in the business of insurance, and the many interests which it involves, have demonstrated that many of the decisions heretofore made respecting it are unwise, and have created a necessity for innovation. Every law should be reasonable, and it is reasonable only when it is adapted to human conduct. Courts should not so administer the law as to require of individuals a course of conduct which, to a majority of reasonable and right-minded men, is unusual and unnatural. Indeed, it would be impossible long to maintain a law which is at variance with the judgment and sense of justice of a majority of those upon whom it operates.

1. INSURANCE: custom of notifying when premiums become due.

Now it must strike every reasonable mind, that a majority of ordinarily prudent persons, who had been customarily notified of the time when premiums upon their policies became due, and who had received no notice of an intention to abandon the customary course, would, in a particular case expect and await a like notice. And if such is the reasonable and natural result of the previous dealings of the company, it must govern its future conduct so as to accord with the reasonable expectation thus created.

That is, having furnished a policy holder reasonable ground for expecting that he will be advised when his premium becomes due, the company must continue to give such notice until it furnishes the assured notice that he need no longer expect it. Any other construction would make the law a trap to ensnare the unwary.

2. ——: change of residence: notification by mail.

For a person thus accustomed to notice and, not accustomed to charge his memory with the day when his premium became due, would be very likely, in the absence of notice to allow the day for making payment to pass by, in utter forgetfulness of the premium, or to suppose that the local office had received no

estimate, from the general office of the amount due, and hence was not ready to receive it. See *Buckbee v. United States Ins. Co.*, 18 Barbour 541; *Thompson v. St. Louis Mutual Life Ins. Co., Ins. Law Journal*, 1873, p. 422.

And the foregoing remarks are all applicable to so much of the third instruction as refers to the habit of receiving premiums on this policy after they became due, as well as to the fifth instruction.

As to the remainder of this instruction it is conceded that the tendency of late decisions is to hold insurance companies liable for the acts of their agents. *Viele v. Germania Insurance Co.*, 26 Iowa 9; *Miller v. The Mutual Insurance Co.*, 31 Iowa, 216. It is claimed however that Oatman was not in such sense an agent of the company that he could bind it by his acts. We think otherwise. He was employed in the office of the general agent and paid by the company. He called in person upon the deceased and collected from him the last five premiums. Three of these he collected after the day fixed for their payment. No question was ever made as to his authority to act in this capacity. The company by so holding him forth and permitting him to act, has recognized him as its agent for the collection of premiums at least. It is clear that if he had appropriated to his own use the premiums paid, the assured could have claimed the benefit of the payments made. He had the receipts of the company, countersigned by the general agent, and thus was, by the direct act of the company clothed with the insignia of agency. And whilst engaged in the business of the company, and within the scope of his employment he had, it seems to us, authority to bind the company by his agreement that he would do respecting the premium falling due August 22d, 1872, as he had done with reference to the five preceding ones, namely, call at the residence or place of business of the deceased and collect it.

Objection was made to the testimony of the witness Oatman, as to the custom of defendant respecting notice to policy

holders, also with reference to what passed between him and Mayer at the time the last premium was paid.

We have already determined the admissibility of this evidence, in what we have said respecting the instructions.

AFFIRMED.