O. N. RIGGS, Appellee, v. BOHUMIL MEKA, Appellant.

No. 46595.

JANUARY 9, 1945.

REHEARING DENIED MARCH 9, 1945.

Albrecht & Knox, of Iowa City, for appellant.

Dutcher, Ries & Dutcher, of Iowa City, for appellee.

BLISS, J.—The only defense pleaded to plaintiff's action was that plaintiff had failed to serve the notice terminating the 1943–1944 lease on March 1, 1944, as provided in section 10161, Iowa Code of 1939, which is:

"Agreement for termination. Where an agreement is made fixing the time of the termination of the tenancy, whether in

writing or not, it shall cease at the time agreed upon, without notice. In the case of farm tenants, except mere croppers, occupying and cultivating an acreage of forty acres or more, the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other not later than November 1, whereupon the tenancy shall terminate March 1 following; *provided further, the tenancy shall not continue because of absence of notice in case there be default in the performance of the existing rental agreement.*"

Plaintiff conceded that the statutory notice was not served by him, but alleged that service thereof was not required, and that the alleged defense was not available to defendant for two reasons: first, that defendant had defaulted in the performance of the rental agreement, by not paying the rent at the times specified therein; second, that he had lost such statutory right by waiver and estoppel.

The court found both grounds to be good and established, and based its decree on such findings.

There is no dispute in the evidence, of any consequence or materiality, as to any pertinent fact. The facts are, in substance, as follows: Plaintiff's farm contains two hundred thirty-seven acres; defendant had been a tenant thereon since 1930; the tenancy was sometimes under written lease, and sometimes oral; the lease for 1942–1943 was an oral lease; the tenant was in arrears for a large amount of rent and the plaintiff was desirous of securing a new tenant; he therefore, on October 31, 1942, served on defendant the notice, under the aforesaid section, terminating the 1942–1943 lease on March 1, 1943; at the time this notice was served the defendant was in arrears on the rent for that year; at different times in November, December, and January, following the service of the notice, the defendant, personally and through an attorney, entreated the plaintiff to lease him the place for another year, since it was too late when the notice was served for him to lease another farm; plaintiff refused these entreaties a number of times but finally relented and told defendant's representative that he would lease the farm to defendant for just one year, on condition that he pay at once

the 1942–1943 rent which was past due, and on the further condition that he would then agree to leave the farm by March 1, 1944, without any trouble or claim for damages, and that unless he complied with these conditions the plaintiff would not lease him the farm; the defendant complied with the conditions by paying the rent and agreeing to leave the premises by March 1, 1944; defendant had his attorney prepare a typewritten lease on February 1, 1943, in compliance with this verbal agreement, providing as follows:

"The length of this lease is from March 1, 1943 to March 1, 1944 and for this year only and the tenant agrees to move from the farm at the expiration of the lease and further agrees not to make any claims against the landlord at that time for any damage he may suffer as a result of the moving."

The lease provided that the rent, evidenced by notes, was payable $500 on or before October 1, 1943, and $1,900 on or before January 15, 1944. Defendant read the lease and signed it in the presence of his lawyer. Later, plaintiff signed it. He testified that he would not have executed the lease had not defendant agreed to the stipulated conditions. Prior to November 1, 1943, defendant gave no intimation to plaintiff that he was not going to vacate the farm on March 1, 1944. Defendant testified that prior to November 1, 1943, during that year he looked for a farm to buy, and for farms to rent for the following year, and "that he signed the lease in question of his own free will; that he knew what was in it *and that his first real thought of staying on after March 1, 1944 came when Mr. Riggs failed to serve notice on him by November 1, 1943; that prior to November 1, 1943, he had planned on leaving and had looked for farms."*

Defendant, as a witness for himself, did not deny directly the verbal conditions on which the lease was executed. He was evasive and nonresponsive in his answers, but his ultimate admissions fully corroborated the plaintiff, as the following examination indicates:

"Q. When you signed that lease you intended to convey to Mr. Riggs the thought that you would get off that farm in March, 1944, if he'd sign a new lease, isn't that true? A. Well,

you're trying to get some definite answer but I know this much, it can't be put in a lease. Q. What can't be put in a lease? A. A paragraph like this. * * * Q. Were you trying to fool Mr. Riggs into getting possession of the farm? A. No, he had that put in himself. Q. *And if it hadn't been in there you wouldn't have got the place another year, would you?* A. *No.* Q. That's right. Who prepared the lease? A. Mr. White. Q. Mr. White was your attorney? A. Yes. * * * Q. You were about to be moved off then in the spring of 1943, is that correct? A. Right. Q. *And you represented to Mr. Riggs that if he would let you stay on there for just one more year that you would get off on March 1 and not make any trouble, isn't that true? March 1, 1944?* A. *He said no for quite a while and till first of February.* Q. *But finally you did persuade him that you would get off on March 1, 1944, if he would just let you stay there for another year?* A. *No, I didn't, Mr. White did."*

Relying upon the assurances and agreement of the defendant that he would vacate the farm on March 1, 1944, plaintiff leased the farm to another in September 1943. While defendant testified that he did not learn of this "directly," he admitted that he heard of it from others. Plaintiff had agreed to repair the windmill, and did so, but because he could not get new parts the pump did not work with full efficiency. While discussing this matter with Mr. White, in the early fall of 1943, he asked the latter about serving a notice upon defendant terminating the lease on the following March 1st. White told him "there was some doubt in his mind about having to serve notice but that if he were in his place he would serve it."

Plaintiff prepared the statutory notice to terminate the lease and on going to the farm to serve it found that the defendant had broken a finger on October 27th and was in the hospital threatened with blood poison. Defendant's nurse would not let plaintiff see the defendant, and plaintiff, not desiring to do anything that might interfere with defendant's recovery, made no further attempt to serve the notice.

Defendant did not pay the rent due on October 1, 1943, nor the balance of the rent due on January 15, 1944. His only excuse was that he wished to use the money to buy feeding cat-

tle. He bought no cattle. Defendant had eighty acres of corn which yielded eighty bushels an acre, and twenty-seven acres of oats which yielded fifty bushels to the acre. After January 15, 1944, plaintiff brought action aided by attachment to collect the rent. Defendant shipped his hogs the day before the attachment was levied. After return day and on February 1, 1944, a compromise settlement of the 1943–1944 rent was made and defendant paid plaintiff $2,133 therefor. At this time plaintiff credited defendant with $6,000 for arrearages in back rent which he had never paid, and as plaintiff testified "he gave Meka a clean bill for rent." Defendant refused to leave the farm on March 1, 1944, and the suit before us was then brought.

I. This appeal is de novo and the record fully justifies our conclusion that the appellant, by his acts, conduct, and agreement prior to the execution of the 1943–1944 lease, and in the procurement thereof, had waived and estopped himself to claim the benefits of said section 10161, and the able trial court was right in so finding and further finding that the equities of the cause were with the appellee. Section 10161 may be an instrumentality for the protection of the tenant, but it was never intended to be used as a snare to deceive and entrap the landlord. One seeking equity must do equity and be in court with clean hands. We have held that a tenant may bar himself from the protection of section 10161 by waiver, estoppel, or agreement. See Crittenden v. Jensen, 231 Iowa 445, 1 N. W. 2d 669; Smith v. Coutant, 232 Iowa 887, 6 N. W. 2d 421; and Evans v. Davies, 232 Iowa 1207, 7 N. W. 2d 780. As said in Seymour v. City of Ames, 218 Iowa 615, 619, 255 N. W. 874, 876:

"An estoppel is based upon the idea that one who has made a certain representation or taken a certain position, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon."

II. Appellant insists that since he paid the 1943–1944 rent before the termination of the lease he had not defaulted in the performance of the rental agreement, while appellee contends that the provision in section 10161 which we have italicized was breached when appellant failed to pay the installment of rent due October 1, 1943, and was further breached by nonpay-

ment of the balance of the rent due on January 15, 1944, for both of which installments he had given his promissory notes. No part of the rent was paid until court action was brought therefor and a landlord's attachment was levied. The hogs on which the appellee had a landlord's lien were removed from the farm before a levy could be made upon them. Appellee insists that it was never the intention of the legislature to require termination of a lease to be effected by service of notice therefor on a tenant who did not carry out his rental agreement or who willfully refused to pay his rent when due. The trial court agreed with appellee's contention in this matter.

It is our conclusion that the tenant-appellant, in failing to pay the rent at the times required in the lease and in the promissory notes, thereby defaulted in the performance of the existing rental agreement, as provided in that portion of said Code section 10161 which we have italicized herein, and that because of said default, the service of the notice to terminate the lease on the March 1st following, as specified by the statute, was not required of the landlord-appellee.

The judgment and decree is therefore—Affirmed.

HALE, C. J., and OLIVER, MILLER, GARFIELD, WENNERSTRUM, SMITH, and MANTZ, JJ., concur.

MULRONEY, J., concurs in result.