MRS. MARIE LAUGHLIN et al., Appellees, v. EDWARD HALL, Appellant.

No. 46775.

NOVEMBER 13, 1945.

Ferguson & Ferguson, of Shenandoah, for appellant.

Keenan & Clovis, of Shenandoah, for appellees.

MULRONEY, J.—The plaintiff Mrs. Marie Laughlin was the owner of a farm which had been leased to defendant, Edward Hall, since 1937. There was a written lease for the year 1939, which was renewed for subsequent years. The defendant occupied the farm for the crop year 1944 under a renewal of the 1939 lease but refused to move off March 1, 1945, and on March 3, 1945, Mrs. Laughlin and the plaintiff Ed Leahy, to whom she had rented the land for 1945, brought this action in forcible entry and detainer, in the district court of Fremont county, to oust the defendant from the farm. Since no notice was given to Hall by November 1, 1944, under the provisions of sections 10161 and 10162, Code of 1939, the question was whether the defendant had consented to the termination of his lease on March 1, 1945, or waived the notice, or was estopped to rely on the failure to give him notice. There was also another question as to defendant's right to assert the absence of notice based upon the contention that he was in default in payment of rent. The trial court's findings answered all questions in favor of plaintiffs and entered decree ousting defendant. The latter appeals.

I. Sections 10161 and 10162, Code of 1939, as amended by chapter 255, Acts of the Fiftieth General Assembly, provide that a farm "tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by either party to the other" on or before November 1st. The statutes also provide that "the tenancy shall not continue because of absence

of notice in case there be default in the performance of the existing rental agreement.''

Since we have held that a tenant cannot assert the absence of the notice required in the foregoing statutes as a bar to an action to terminate his tenancy if he has consented to such termination or by his actions and conduct waived or estopped himself, the problem is reduced to an examination of the evidence which the trial court deemed sufficient to establish such consent, waiver, and estoppel. See Riggs v. Meka, 236 Iowa 118, 17 N. W. 2d 101; Crittenden v. Jensen, 231 Iowa 445, 1 N. W. 2d 669; Smith v. Coutant, 232 Iowa 887, 6 N. W. 2d 421; Evans v. Davies, 232 Iowa 1207, 7 N. W. 2d 780.

The record shows that Mrs. Laughlin lives on another farm she owns across the road from the farm she had rented to Hall. The record also shows that in August and September of 1944, Mrs. Laughlin and Hall had some negotiations with respect to renting the farm for 1945. Her version of the negotiations is as follows: About the first part of September 1944, she went to see Mr. Hall to talk to him about cutting burs and weeds. She found him at a neighbor's house and when he told her he had not cut the burs and weeds, she said to him: ''You act like you don't want the place.'' He then said: ''I don't think I do.'' She told him to tell her definitely whether he wanted it or not as she could get a renter and that good renters ''are to be found early in the year.'' He did not reply but ''stood there with his head down and never answered'' and she then said, ''All right I will hunt another renter.'' She then negotiated a lease for 1945 with Ed Leahy. She testified:

''I had another conversation with him after Ed Leahy and I had talked it over and come to an oral agreement as to the terms. He came to my house. I was there by myself. He said, 'I believe I will take the place.' I said, 'I have it about rented to Mr. Ed Leahy now. We have all the arrangements about made to rent it to Ed Leahy, but,' I said, 'When I rent it to him for sure, I will go and tell you' which I did.

''I was over there three or four days after I rented the farm to Leahy. Mr. John Craig, who works for me, was with me. Mr. Hall was there. I said I had this place rented to Ed

Leahy, and, I said, 'It's better. It makes too much work for me to take care of this place with your being on here without a family.' I said, 'It's too much responsibility for me.' He said, 'Well, that's all right. I was wishing I didn't have it last summer.' And then is when I asked him to come in and to repair the house and paint and paper it. He said that was all right.''

The lease with Leahy was signed October 14, 1944, and almost immediately after its execution she proceeded to repair and paper the house on the farm. She employed workmen and she assisted in the work herself and this work was completed about the middle of November 1944. John Craig testified as to the conversation between Mrs. Laughlin and Hall when he was present, corroborating Mrs. Laughlin's version of what was said.

Ed Leahy testified about a conversation he had with Hall in Shenandoah about January 20, 1945, when he asked Hall if he cared if he moved his property and farm implements onto the farm. He testified that Hall said ''it would be okey, it would be all right.'' About two weeks later Leahy moved a load of implements to the farm and put them near the corncrib. On March 1st he brought a load of household goods to the farm and placed it on the porch. Hall was not there either time.

The plaintiffs, as witnesses, and the witness Craig were not cross-examined and defendant was the sole witness in his behalf. His testimony consists of a denial of the conversation as related by Mrs. Laughlin and Craig. He stated that when Mrs. Laughlin asked him if he wanted the farm for the next year he said he would let her know the latter part of the week and when she was over to the farm again the latter part of the week he told her he wanted the farm and he told her he was ''figuring on staying.'' He told her it was all right to fix up the house but he said he did not know at that time Ed Leahy had it rented. He had no family and cooked in the house only part of the time and he slept in a downstairs bedroom. The record shows that the house is an eight-room house and the repairs and painting included papering the four rooms downstairs and two or three rooms upstairs. Hall denied that he

had any conversation with Ed Leahy about the farm. He admitted he saw Leahy a time or two on the street in Shenandoah but stated he did not talk to him. He knew the goods that were brought to the farm were Leahy's but he did not tell him to move the goods off the farm. He stated that he did learn in the first part of October that Ed Leahy had rented the farm but he stated the house repairs had been completed by then and he denied that he had said anything to Mrs. Laughlin that it was all right to lease this farm or that she had leased it.

This constitutes the entire record of testimony with respect to consent, waiver, and estoppel. The trial court believed plaintiffs' version of the conversations and held defendant had consented to the lease to Leahy and had waived the statutory notice and was estopped to assert failure to serve the notice. We agree with its conclusion. Her story of what was said in these conversations to the point where she told him in October that she had rented to Leahy and he said, "Well that's all right, I was wishing I didn't have it last summer," would establish his consent and constitute a waiver of any claim to occupy the farm the next year. After telling her that it was "all right" that she had rented it to another and that he was sorry he had rented it for the past year, he was estopped from making a claim of such a right to occupy the farm, based upon the failure to give him notice that his lease was to terminate the next March 1st.

This statement is corroborated by Craig. The repairs on the six or seven rooms of the house in October with defendant's consent are consistent with defendant's knowledge and consent that Leahy was to move onto the farm March 1st. Mrs. Laughlin might not feel it necessary to paper six or seven rooms in the house for defendant, who occupied only two or three rooms. Leahy's moving the implements onto the farm in February is consistent with his story that he obtained permission in advance from Hall and such permission would be consistent with defendant's prior consent that Leahy was to occupy the farm March 1st under his lease. Defendant's denial that he granted permission to Leahy to move his goods onto the farm is somewhat weakened by his testimony that he knew the goods were

Leahy's but he made no effort to contact him to tell him to move the goods off of the farm, though he saw him in Shenandoah a time or two.

We need not again discuss the legal principles governing waiver and estoppel in cases under these notice statutes. We enumerated the principles in Smith v. Coutant, supra, 232 Iowa 891, 6 N. W. 2d 424, and stated:

"In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon."

With the conflict in the testimony resolved in favor of Mrs. Laughlin's version, the application of the doctrine of waiver and estoppel is clear.

Upon the whole record, we hold defendant consented to the lease to Leahy and waived notice under sections 10161 and 10162 and is estopped to claim a right to occupy the farm for 1945 based on the failure to give such notice. There was other testimony touching on defendant's alleged default in the payment of cash rent. Because we hold the notice was waived in the negotiations prior to November 1, 1944, we need not discuss whether its absence was excused because of alleged default in performance of the rental agreement. The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.