GUST WETZSTEIN, appellant, v. MARVIN DEHRKOOP et ux.,
appellees.

No. 47758.

(Reported in 44 N.W.2d 695)

NOVEMBER 14, 1950.

W. J. Broz, of Dysart, and M. W. Hyland, of Tama, for appellant.

Howard E. Hensleigh, of Traer, and Dean P. Thomas, of Tama, for appellees.

BLISS, J.—On January 22, 1948, plaintiff, as landlord and first party, and defendant Marvin Dehrkoop, as tenant, executed a written lease of said premises for their occupancy and use by second party from March 1, 1948 to February 28, 1949. The lease provided that the consideration given by second party was a specified cash rent for certain portions of the land and a specified share of the crops. The lease contained the usual provisions of an Eldridge farm lease, including a covenant that second party at the expiration of the term of the lease would yield possession to the first party without further demand or notice.

The lease contained the following added clause: "First party to advise second party on or before July 1st, 1948 if he desires possession of premises at expiration of the lease."

While there was no express agreement between the parties during the period of the tenancy that the lease was to be extended

under the same terms for another year, the record clearly shows there was such an implied agreement. Plaintiff testified on direct examination that "the lease from March 1, 1949 to March 1, 1950 was the same as the lease from March 1, 1948 to March 1, 1949." Defendant does not dispute this, and he did farm the place during the year ending March 1, 1950.

It appears from the testimony of Ben Pippert, a witness for plaintiff, that the farm on which he was a tenant had been sold and that he would have to vacate it on March 1, 1950; he had heard that plaintiff's farm was for rent, and about June 1, 1949, he asked plaintiff about it and plaintiff told him the farm was for rent "fifty-fifty, livestock and all," but that he would not rent it then as Marvin Dehrkoop was to have first chance. Mr. Pippert further testified that "plaintiff came to him the latter part of July and told him he would rent the farm to him on a fifty-fifty basis, as Marvin Dehrkoop didn't care to rent on that basis. He and plaintiff entered into a lease for the farm on a fifty-fifty basis of everything, he [Pippert] to furnish gas, oil and equipment. He rented sixty acres across the road from the Wetzstein farm from Richard Leo the latter part of September. Martin Dehrkoop had been renting this land."

Plaintiff's testimony fully confirmed the testimony of Pippert. He also testified that in the latter days of June 1949 he went out to the farm and told Mr. Dehrkoop that he wanted to lease the farm for the next year on a fifty-fifty basis, that is livestock and all, and that was the only way he would rent it to him, and that Mr. Dehrkoop said "he wasn't interested in that kind of a deal." Plaintiff testified that he then made such a lease with Pippert, and later Pippert told him he had rented the sixty acres across the road from his (plaintiff's) farm from Mr. Leo; that both of these farms had been operated together since 1925, including the two years that Dehrkoop had occupied plaintiff's farm; that in the fall of 1949—he thought it was in October, but apparently it was in November—he heard that Mr. Dehrkoop intended to stay on the farm, and he and Mr. Schuchart went out to see Mr. Dehrkoop on November 17, according to Mr. Schuchart, and Mr. Dehrkoop confirmed the report and said that he did intend to stay on the farm. Of this meeting the plaintiff testified:

"I then had a conversation with him and he admitted he told me in June he wasn't interested in the fifty-fifty proposition, and that I had told him in June I wouldn't rent it on any other basis. Mr. Schuchart was there and heard the conversation. Defendant didn't say why he was not getting off the place, and I haven't seen him since."

This is what Ralph Schuchart, a retired farmer and an acquaintance of both Mr. Wetzstein and Mr. Dehrkoop, testified about the conversation:

"Was out to Wetzstein farm with Gust Wetzstein November 17. I keep a diary is how I know the exact date. * * * I was out to the farm with him just once and that was November 17, 1949. * * * I heard the plaintiff and Marvin Dehrkoop have a conversation there in my presence. Plaintiff told Mr. Dehrkoop about renting the land, he wanted to rent it fifty-fifty and Dehrkoop said he wasn't interested or didn't want to rent it that way. They talked about their conversation the 27th or 28th of June. Mr. Dehrkoop admitted to Mr. Wetzstein in my presence he said at that time in June he wasn't interested in renting the farm on a fifty-fifty basis."

There is no foundation for a reasonable doubt as to the meeting between plaintiff and Dehrkoop on the 27th or 28th of June, 1949, or of the reason for it, or of what was said by each of them, or that either of them did not clearly understand the full import of the meeting and of what took place. They had stated in writing that Wetzstein was to "advise" Dehrkoop on or before July 1 if he wished possession of the farm on the first day of the following March. It is a fair inference that the clause was put into the lease at the request or insistence of Dehrkoop. It was an advantage to Dehrkoop, and a limitation on Wetzstein in the control of his property. By this agreement Wetzstein was required to "advise" Dehrkoop four months earlier than the time fixed for the giving of the notice of termination by section 562.7, Code, 1946. Wetzstein thought it was binding and he was complying with it. He had given his written word and he was trying to keep it. He had decided that he wished a "fifty-fifty" arrangement with his tenant for the coming farm year. He was willing

to make such a lease with Dehrkoop. Pippert testified that Wetzstein had told him that Dehrkoop was entitled to the first chance. It was for these reasons that plaintiff called upon Dehrkoop · on the 27th or 28th of June, 1949.

There can be no fair question that Wetzstein told Dehrkoop just what Wetzstein testified he told him as herein set out. Pippert testified that the plaintiff told him he was going to tell Dehrkoop that he wanted a tenant on the fifty-fifty plan. Schuchart testified that Dehrkoop admitted to him and Wetzstein that that was just what the latter told him on June 27 or 28. The able and experienced trial court in his "Conclusions of Law" stated: "Wetzstein complied with his lease in his talk with Dehrkoop in June."

Mr. Dehrkoop fully understood that Wetzstein wished a fifty-fifty arrangement for the coming year and said he would rent it no other way, and that he was advising him that he wished possession of the place the first day of the following March. At that time Dehrkoop thought the clause as to advising him before July 1 was good, and binding on him. He testified:

"According to the lease I knew that Mr. Wetzstein had to notify me before July 1st that the lease would not continue and if he had not notified me by July 1st of 1949 I would have had the right to continue on unless I had done something contrary to the terms of the lease. * * * If he hadn't notified me before July 1st I was sure that I would be on the place another year under the terms of the lease."

Mr. Dehrkoop fully understood that on June 27 or 28 he was "advised" by plaintiff that his tenancy was being terminated on March 1, 1950, because he was not willing to rent fifty-fifty. He was determined at that time that he would not farm the place under that plan, and he never changed his mind. In the summer of 1949 he inquired of Mrs. Inez Dickson, a witness for plaintiff, whether their farm was for rent, and she told him that her husband intended to rent the farm fifty-fifty, and that terminated the conversation so far as the farm was concerned. Mr. Dehrkoop told her that he owned his own machinery and was not interested in renting on that basis. Mr. Dehrkoop talked with Mr. Moeller,

witness for plaintiff, a banker at Traer, about buying a farm. He had no thought then of being a tenant of plaintiff.

Mr. Richard Leo, a retired farmer and State senator from his district, was a witness for plaintiff. He knew the plaintiff and Mr. Dehrkoop. During the farming seasons of 1949 and 1950 the latter had occupied the sixty acres across the road from the Wetzstein farm under lease from Mr. Leo, who testified:

"Talked with defendant in the summer of 1949, when defendant told him, 'I have to leave Gust Wetzstein's farm and I would like to have you keep your eyes open for a good farm in the Dysart vicinity.' Conversation was about the first week of July, 1949. There was no conversation about renting the sixty acres which had always been rented by him [Leo] to whoever rented the Wetzstein place. Had rented, sometime in August, the sixty acres to Ben Pippert. * * * Defendant stated absolutely and positively he had to leave the Gust Wetzstein farm, that is the interpretation I got from it. I couldn't get any other interpretation from what he said."

Mr. Dehrkoop's testimony as to what took place between him and plaintiff is substantially the same as plaintiff testified, with slight variations favoring himself. He testified that he thought maybe plaintiff's answer in June 1949 was not final, and that he would later reopen negotiations. If Mr. Dehrkoop had such thought or hope there was no basis for it in what plaintiff told him. What Mr. Dehrkoop said and did at the time and in the summer months following, as shown by the evidence of disinterested witnesses set out herein, strongly indicate that he had no serious belief that plaintiff's decision was not final. Had he thought otherwise he would likely have approached plaintiff on the subject, but he never did. To the mind of this court his undenied conduct more forcibly and truly reveals the facts than his statements made after November 1, 1949. He testified that plaintiff never told him he had rented the place to Pippert. But after plaintiff had told him he was going to rent the place fifty-fifty, and defendant said he was not interested in so renting it, that was an end of the matter, and plaintiff was under no obligation to tell him to whom he had rented the farm. Mr. Dehrkoop,

however, testified that he said to plaintiff: "I understand Benny Pippert has the place rented."

Mr. Dehrkoop testified: "I was insisting on staying on the farm by virtue of the fact that notice was not served on me. That was what was in my mind on November 1st. I had decided to stay on the farm before November 1st. *I had all along.*" If he had such intention "all along" perhaps he never intended to abide by the clause in the lease requiring plaintiff to "advise" him before July 1 of his intention to terminate the lease. On redirect examination he testified that he knew just how the statutory notice could be served, "I knew that a statutory notice had to be served because of two or three cases that had come up in the neighborhood." Code sections 562.6 and 562.7 were probably enacted for the benefit of the tenant but they were never intended to be used as a device to entrap or to take an unfair advantage of the landlord. The conduct of the plaintiff was scrupulously fair toward defendant.

Appellant relies upon two propositions for reversal: (1) under the record, Marvin Dehrkoop was estopped to claim the benefits of the sections of the Code just cited, and (2) the court erred in holding the termination of the lease, as provided by its terms, did not obviate the necessity of giving the notice provided in said Code sections.

I. The principles of equitable estoppel have many times been announced by this court and further recitation of them is needless. The principle of equitable estoppel is clearly and concisely stated by Justice Mitchell in Seymour v. City of Ames, 218 Iowa 615, 619, 255 N.W. 874, 876, as follows: "An estoppel is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied thereon." We have frequently approved the statement. Swift v. Swift, 239 Iowa 62, 70, 29 N.W.2d 535; Staples v. Staples, 238 Iowa 229, 236, 26 N.W.2d 334; Riggs v. Meka, 236 Iowa 118, 122, 17 N.W.2d 101, and decisions cited in these cases. The theory of equitable estoppel is well-stated in Hainer v. The Iowa Legion of Honor, 78 Iowa 245, 251, 43 N.W. 185, 187:

"The estoppel is allowed to prevent fraud and injustice, and exists wherever a party cannot, in good conscience, gainsay his

1244

own acts or assertions. Again, it is said that where a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterward be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or to someone claiming under him."

As stated in Blackman v. Carey, 192 Iowa 548, 552, 185 N.W. 87, 89:

"Equity will not permit a person to throw another off his guard and through such means obtain an unfair advantage. A person cannot gainsay his own acts and assertions or mislead another to his detriment. If a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights to the injury of him who is misled thereby. * * * Equity requires that a person refrain from enforcing a claim which he has induced another to suppose he would not rely upon."

We are not required to determine what motives impelled Mr. Dehrkoop in his dealings with plaintiff. It is clearly established that in reliance upon Mr. Dehrkoop's statement in June 1949 that he was not interested in entering into a fifty-fifty lease for the coming farm year, the plaintiff entered into a lease with Mr. Pippert and put himself under legal obligation to perform that lease, and when defendant thereafter took a position inconsistent with his stand on June 27 or 28 the plaintiff was prejudiced. He had made a contract which he could not perform. He was deprived of his right to operate his farm in a manner which he considered to be to his best interest.

Mr. Dehrkoop agreed to a clause in the lease which was to his advantage, and later repudiated it. As said in Helwig v. Fogelsong, 166 Iowa 715, 723, 148 N.W. 990, 994: "A party who has taken one position by which he expects to be benefited is estopped from repudiating that and taking another inconsistent position to the prejudice of another."

As said in Hart v. Worthington, 238 Iowa 1205, 1219, 1220, 30 N.W.2d 306, 313:

"It is not necessary that the one sought to be estopped had a fraudulent intent. It is sufficient if a fraudulent result would follow if he be permitted to enforce a claim inconsistent with his previous declarations or conduct. [Citing cases.] * * * Such a result would be a constructive fraud upon the injured person. [Citing cases.]"

█ Under the law and the clearly established facts the plaintiff is entitled to a reversal of the judgment and decree of the district court upon the first proposition relied upon. The record fully sustains the allegations of the petition. The principles of the doctrine of equitable estoppel are sound and wholesome and have been approved by this court under approximately similar circumstances. Smith v. Coutant, 232 Iowa 887, 890–893, 6 N.W.2d 421; Evans v. Davies, 232 Iowa 1207–1209, 7 N.W.2d 780; Riggs v. Meka, supra, 236 Iowa 118, 122, 17 N.W.2d 101; Laughlin· v. Hall, 236 Iowa 990, 992, 20 N.W.2d 415; Baie v. Nordstrom, 238 Iowa 866, 868–870, 29 N.W.2d 211.

Because of our conclusion on proposition one it is not necessary to pass upon proposition two.

II. In plaintiff's brief and argument he designates the case as one at law. Defendants call it an action in equity. The district court apparently, and rightly, tried the case as in equity. Our rules of procedure in proceedings for declaratory relief or judgments do not state whether the action should be in the law or equity forum of the district court, which under the statute (section 604.1, I. C. A., Codes of 1946 and 1950) and under numerous decisions (In re Magner, 173 Iowa 299, 317, 155 N.W. 317; In re Estate of Ferris, 234 Iowa 960, 973, 14 N.W.2d 889; Jennings v. Schmitz, 237 Iowa 580, 585, 20 N.W.2d 897; In re Estate of Anders, 238 Iowa 344, 350, 351, 26 N.W.2d 67; Consolidated Constr. Co. v. Begunck, 233 Iowa 463, 472, 9 N.W.2d 390) has general, original and exclusive jurisdiction of all actions, proceedings and remedies, whether law or equity, or civil, criminal or probate.

Our rule 268, Rules of Civil Procedure, provides that the right of trial by jury shall not be abridged or extended by rules 261–267.

The courts generally are not in accord as to the nature of declaratory proceedings or the forum in which they should be

tried. It has been said by a number of jurisdictions that they are special proceedings of an equitable nature. Rosenberg v. Whitefish Bay, 199 Wis. 214, 225 N.W. 838; Belanger v. Local Division etc., 256 Wis. 274, 40 N.W.2d 504, 506; Town of Manchester v. Town of Townshend, 109 Vt. 65, 192 A. 22, 23, 24, 110 A. L. R. 811; Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 296 P. 206, 213. Other courts state that relief by declaratory judgment is sui generis, while not either strictly legal or equitable, yet its historical affinity is equitable. Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 955, 130 S.W.2d 945, 954, citing Borchard on Declaratory Judgments, pages 137, 138, 172, 178; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 713, 172 A. L. R. 837.

 But the better rule appears to this court to be that the legal or equitable nature of the proceeding is to be determined by the pleadings, the relief sought, and the nature of each case. Liberal Savings & Loan Co. v. Frankel Realty Co., 64 Ohio App. 97, 28 N.E.2d 367. See also Maine Broadcasting Co., Inc. v. Eastern Trust & Banking Co., 142 Maine 220, 224, 49 A.2d 224, 226, where the court said:

"That the petitioner assumed it to be an action in equity is, however, immaterial if the subject matter is of such a nature that the court to which the petition is addressed may give the desired relief. As a matter of fact the relief may be availed of either in courts of equity or in courts of law, Stephenson v. Equitable Life Assur. Soc., supra; [4 Cir., Va., 92 F.2d 406, 408] but the action must be brought in that court which has jurisdiction of the subject matter. Wolverine Mut. Motor Ins. Co. v. Clark, 277 Mich. 633, 270 N.W. 167; Ewing Tp. v. City of Trenton, 137 N. J. Eq. 109, 43 A.2d 813."

As stated by the Michigan court, in the case cited just above: "Is plaintiff in the proper forum? It is plain from the whole statute that the remedy must be sought in the appropriate court and 'the nature of the case,' not the pleasure of the petitioner, is the test of the forum." 277 Mich. at page 636, page 168 of 270 N.W.

Anderson's Actions for Declaratory Judgments, section 3, pages 11, 12, states the Declaratory Judgment Act "is an alternative or additional remedy to facilitate the administration of jus-

tice more readily * * * an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities." See also 1 C. J. S., Actions, section 18, page 1046 et seq.; 16 Am. Jur., Declaratory Judgments, section 15.

The proceeding before us was brought before the controversy had ripened into a cause of action. It would have been ripe on March 1, 1950. At that time the merits of the cause could have been tried as an action of forcible entry and detention and as an equitable action (section 648.5, I. C. A., Codes 1946 and 1950) or in an action to quiet title. Welch v. Keeran, 233 Iowa 499, 7 N.W.2d 809; Riggs v. Meka, supra, 236 Iowa 118; Laughlin v. Hall, supra, 236 Iowa 990; Baie v. Nordstrom, supra, 238 Iowa 866; Potter v. Henry Field Seed Co., 239 Iowa 920, 32 N.W.2d 385; Snyder v. Abel, 235 Iowa 724, 17 N.W.2d 401; North v. Kinney, 231 Iowa 951, 2 N.W.2d 407; Bates v. Bates, 237 Iowa 1408, 24 N.W.2d 460; Skaff v. Godbersen, 237 Iowa 1414, 24 N.W.2d 361.

The proceeding was therefore properly tried as an equity action, and, in this court on appeal, is reviewable de novo on the law and the facts.

It is our conclusion that the judgment and decree of the trial court should be, and it is, reversed and remanded for entry of decree in conformity with this opinion.—Reversed and remanded.

All JUSTICES concur except JUSTICE HALE, who did not sit.