CLYDE SANBORN, appellee, v. MARYLAND CASUALTY COMPANY, appellant.

No. 51175.

(Reported in 125 N.W.2d 758)

1320

JANUARY 14, 1964.

Irish & Haughey, of Altoona, for appellant.

Linnan, Lynch & Straub, of Algona, for appellee.

MOORE, J.—This is an action for declaratory judgment by plaintiff, Clyde Sanborn, against defendant, Maryland Casualty Company. In his petition plaintiff alleged and in the trial court contended coverage under a family liability insurance policy was automatically extended past the expiration date and asked for a declaration of his rights against defendant. He based his

contention on alleged custom and an understanding with defendant's agent that coverage was to continue until plaintiff stated otherwise. Defendant asserted that by its express terms the policy had expired and denied any liability arising from an accident which occurred four months thereafter.

The trial court found defendant was estopped to deny the insurance policy was in force and effect at the time of the accident. From a decree finding defendant obligated to investigate and defend the action brought for injuries received in the accident and to pay any judgment resulting therefrom, defendant has appealed.

■■ I. Our rules of procedure do not state whether an action for declaratory relief or judgment should be in the law or equity forum of the district court but our rule is now well established that the legal or equitable nature of the proceeding is to be determined by the pleadings, the relief sought, and the nature of each case. Wetzstein v. Dehrkoop, 241 Iowa 1237, 1246, 44 N.W.2d 695, 700, and citations; Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 100, 106 N.W.2d 86, 88. This case was filed and tried as an equitable action. We therefore review it de novo.

In June 1956 plaintiff purchased a 1949 Ford pickup truck to use on his farm and as an auxiliary vehicle at his furniture store. Shortly thereafter he talked to Claude Timmons, an insurance agent at Estherville. He told Timmons it was very important he have coverage, he could not afford to be without it, he wanted coverage of $100,000 to $300,000 in an old-line stock company and wanted the policy automatically renewed until he informed the agent otherwise. Timmons replied plaintiff's plate glass insurance was with defendant-company and it would be a good one to write the truck insurance. Plaintiff agreed and told Timmons he would rely on him to see he had good coverage.

Soon after this conversation Timmons delivered to plaintiff a policy of insurance on the truck. It was written by defendant and was countersigned by Timmons as defendant's "Authorized Representative". Plaintiff then paid Timmons the first year's premium.

Without requests or applications by plaintiff some time prior to June 11 of the years 1957, 1958 and 1959 the renewal of this policy was handled simply by the agent Timmons delivering a new policy to plaintiff who paid the premium on Timmons' request or billing.

A renewal policy was again written in June 1960 covering the period from June 11, 1960, to June 11, 1961. It is exhibit C in the record. The evidence is in dispute as to whether plaintiff signed an application for this policy. Defendant contends he signed an application for this "Safe Driver Policy" prior to its issuance. Plaintiff admits his signature appears on such an application but testified he signed it in November 1961 under the impression it was an application for renewal of his plate glass insurance. His plate glass insurance had previously always been renewed by Timmons without any request. Timmons' testimony sheds no light on this dispute. We believe it is of little importance as a renewal policy was issued for that period with the same general terms and signed by Timmons as "Authorized Representative" of defendant the same as all prior policies.

In June 1961 and just prior thereto nothing was done to renew the policy. Defendant had in previous years mailed to Timmons a list of policies about to expire, including plaintiff's. The manager of defendant's Des Moines office was unable to find any record such a notice was sent in 1961. Timmons testified he relied on defendant to notify him of the expiration date and none was received in 1961. He also kept a tickler or monthly expiration system showing the expiration dates of policies but by oversight failed to renew plaintiff's policy although he knew plaintiff had left the renewals to him. Timmons was unable to give any reason for the failure. He referred to it as a "comedy of errors".

October 14, 1961, plaintiff's truck was involved in an accident in Estherville. The next day upon learning of the accident plaintiff, believing his insurance was in full force, immediately phoned Timmons. Timmons told plaintiff the insurance was in force and he would have an adjuster come and take care of the matter.

Defendant-company when contacted by Timmons informed him plaintiff's insurance had expired. They refused to investigate or do anything about the accident. When so advised plaintiff sent a registered letter to defendant enclosing a bank money order for more than the usual yearly premium. He demanded they investigate and defend against any claim resulting therefrom. Defendant refused the demands, also to defend an action later instituted against plaintiff by a person injured in the accident.

For reversal of the decree holding defendant estopped to deny the policy, exhibit C, was renewed and in force at the time of the accident, it relies on these propositions: (1) plaintiff has based his case on negligence by which estoppel cannot be established, (2) plaintiff failed to prove his freedom from contributory negligence, (3) the policy contains the entire agreement of the parties and any oral agreement made prior thereto was merged in the policy, (4) Timmons, as agent for the company, had no authority to waive the provisions of the policy, (5) each policy was a separate contract of insurance, (6) neither defendant nor Timmons was under any obligation to notify plaintiff of the expiration of the policy, (7) plaintiff was notified of a change in method of writing this policy in 1960 and had no right to rely on any custom or course of action established prior to such change, (8) the trial court's ruling has the effect of making a new contract between the parties, and (9) the trial court's ruling puts an unconscionable and unbearable burden on companies engaged in liability insurance business.

II. We consider defendant's first two propositions together. Among plaintiff's many allegations for declaratory relief are that defendant and its agent Timmons negligently failed to give plaintiff notice of the expiration of the policy and plaintiff was free from negligence. However a reading of the entire petition clearly establishes plaintiff's claim is based on estoppel, not negligence. Plaintiff's position is thus stated in his brief and argument. "Appellee does not contend and never has that this is a negligence action. Appellee does contend that this is an equitable action based upon an oral contract to renew the insurance policy and that this is an action based upon estoppel.

1324

Appellee's position, therefore, is that the court has a right in determining these questions to consider the negligence of the insurer and its agent."

This case was pleaded, submitted and decided by the court on this theory. We find no merit in defendant's first two assigned propositions.

III. Defendant's third, fifth and eighth propositions are so interrelated that we consider them in one division. Defendant argues the agreement for insurance made by plaintiff and agent Timmons merged in the policy which became the entire and separate contract of insurance and the trial court in effect made a new contract. We do not agree.

■ In Farmers Mutual Hail Ins. Co. of Iowa v. Fox Turkey Farms, Inc. (8 Cir., 1962), 301 F.2d 697, Curtis v. Dearborn Natl. Ins. Co., 329 Mich. 601, 46 N.W.2d 396, and Lundman v. United States Fidelity & Guaranty Co., 163 Minn. 303, 204 N.W. 159, on which defendant relies in support of its contention the oral agreement merged in the policy, the general principle is recognized that parties contracting orally with the understanding a subsequent written version thereof will be executed are bound by the terms of the printed instrument designed to be the final consummation and accurate expression of the oral temporary agreement. With this general principle plaintiff does not disagree but properly points out it has no application under the record here. In the cited cases one agreement was made for the issuance of an insurance policy. The parties recognized the policy was to put in writing their entire agreement. No agreement for renewal nor established custom is so much as claimed in any of these cases.

■ Here we have no evidence of any understanding between plaintiff and Timmons that the first or any subsequent policy was intended as a final consummation and expression of the oral agreement. The contrary is clearly established. By the evidence of the oral agreement followed by the custom established by Timmons of renewing the coverage each year, we conclude the parties' original understanding included an agreement for coverage until plaintiff advised Timmons it was no longer wanted.

The several policies issued were not entire and separate con-

tracts into which the original oral agreement merged. They were only the means adopted by defendant's agent to carry out the agreement for coverage and automatic renewal.

Of course, the trial court could not make a new contract for the parties nor do we believe he did. In Elliott v. Farmers Ins. Co., 114 Iowa 153, 155, 86 N.W. 224, we quote this from Meadows v. Hawkeye Ins. Co., 62 Iowa 387, 391, 17 N.W. 600, 603: "We cannot make a new contract for them, nor refuse to enforce the contract they made for themselves." The conclusion reached by the trial court is an enforcement of the parties' agreement.

IV. Defendant also argues Timmons, as agent, had no authority to waive the provisions of the policy. Defendant's approach to the question of Timmons' authority is too narrow. The real question is whether he acted as agent for defendant in the original negotiations and subsequent dealings with plaintiff. The record shows Timmons and defendant entered into an agency agreement on July 30, 1955 (exhibit F). He was appointed defendant's agent with authority to solicit insurance and bond business, receive premiums, countersign all policies and deliver them. He was furnished certain literature, signs and letterheads holding him out as the representative of defendant-company. He was authorized and did file applications for insurance without the insured's signature. Such applications for plaintiff's insurance were received and approved by defendant. It took plaintiff's business through Timmons and stood ready to continue the established insurance coverage. Defendant cannot now be heard to deny liability from the oversight or negligence of its agent.

We have frequently said authority may be "apparent" as well as "implied". In Northwestern Mut. L. Ins. Co. v. Steckel, 216 Iowa 1189, 1195, 250 N.W. 476, 479, we said:

"There is a distinction pointed out and recognized by the authorities between 'implied' and 'apparent' authority. 'Implied' authority is actual authority, circumstantially proved; while 'apparent' authority is not actual authority, and may often be authority not actually possessed by the agent, but is such as the principal holds the agent out as possessing."

See also Nertney v. National Fire Ins. Co., 199 Iowa 1358, 1361, 203 N.W. 826, 827; Boylan v. Workman, 206 Iowa 469, 220 N.W. 49, 51; Fillgraf v. First Natl. Ins. Co., 218 Iowa 1335, 256 N.W. 421, and citations.

Johnson v. Farmers Ins. Co., 184 Iowa 630, 637, 168 N.W. 264, 266, states:

"There is no magic in the mere name 'soliciting agent,' 'recording agent,' or 'general agent.' * * * The scope and extent of his authority is shown, not merely by reference to his title or to his written commission or credentials, but by the business which he is permitted to do and perform, and does do and perform, in the company's name, or by its apparent acquiescence and consent. His act in that behalf is the company's act, and his neglect with respect to such business is the company's neglect." Similar statements are made in Trotter v. Grand Lodge, 132 Iowa 513, 109 N.W. 1099, 7 L. R. A., N. S., 569, 11 Ann. Cas. 533; Lauhoff v. Automobile Ins. Co. of Hartford, Conn., 56 F. Supp. 493; Lumbermens Mutual Ins. Co. v. Bowman, 313 F.2d 381.

We agree with the trial court's holding defendant is bound by the acts and omissions of Timmons at all times pertinent to the issues in this case.

V. Defendant argues it changed its method of writing plaintiff's policy in 1960 and he had no right to rely on any custom or course of action established prior to such change. The obvious answer is that the record does not disclose such a change of the established relationship and custom. Timmons continued to be authorized to sign applications for renewal of plaintiff's coverage. If any change was to be made or the coverage cease plaintiff was entitled to notice. None was given.

VI. Defendant's contention the trial court's holding puts an unbearable burden on companies engaged in liability insurance business has been submitted without citation of authority. None has come to our attention. We believe the answer is found in Rommel v. New Brunswick Fire Ins. Co., 214 Minn. 251, 264, 265, 8 N.W.2d 28, 35, which states:

"Nor may liability be avoided because defendant made or

permitted a bad choice of agents. Insurance companies are especially well equipped to select competent and trustworthy agents and representatives. Their business is that of underwriting risks and, properly, of charging adequate compensation for assuming such risks. Their principal means of satisfying the profit motive upon which private enterprise depends could not be accomplished otherwise. Agency established, the loss must fall upon the one the agent represented."

VII. The principles of equitable estoppel have been announced by us many times. It is based upon the idea that one who has made a certain representation should not thereafter be permitted to change his position to the prejudice of one who has relied on it. Seymour v. City of Ames, 218 Iowa 615, 619, 255 N.W. 874, 876; Swift v. Swift, 239 Iowa 62, 70, 29 N.W.2d 535, 540; Staples v. Staples, 238 Iowa 229, 236, 26 N.W.2d 334, 337; Wetzstein v. Dehrkoop, 241 Iowa 1237, 1243, 44 N.W.2d 695, 698, and decisions cited in these cases.

31 C. J. S., Estoppel, section 59, page 367, states:

"Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts." See also 19 Am. Jur., Estoppel, section 34, page 634.

In Blackman v. Carey, 192 Iowa 548, 552, 185 N.W. 87, 89, we state:

"Equity will not permit a person to throw another off his guard and through such means obtain an unfair advantage. A person cannot gainsay his own acts and assertions or mislead another to his detriment. If a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights to the injury of him who is misled thereby."

We have applied these principles in cases involving attempts to forfeit insurance policies for nonpayment of premiums where a custom had been established of giving notice of due date or of taking payment thereafter. Mayer v. The Mutual Life Ins. Co. of Chicago, 38 Iowa 304, 309, 18 Am. Rep. 34, states:

"Now it must strike every reasonable mind, that a majority of ordinarily prudent persons, who had been customarily notified of the time when premiums upon their policies became due, and who had received no notice of an intention to abandon the customary course, would, in a particular case expect and await a like notice. And if such is the reasonable and natural result of the previous dealings of the company, it must govern its future conduct so as to accord with the reasonable expectation thus created.

"That is, having furnished a policy holder reasonable ground for expecting that he will be advised when his premium becomes due, the company must continue to give such notice until it furnishes the assured notice that he need no longer expect it. Any other construction would make the law a trap to ensnare the unwary.

"For a person thus accustomed to notice and, not accustomed to charge his memory with the day when his premium became due, would be very likely, in the absence of notice to allow the day for making payment to pass by, in utter forgetfulness of the premium, or to suppose that the local office had received no estimate, from the general office of the amount due, and hence was not ready to receive it." (Citations)

In Loughridge v. Iowa Life & Endowment Assn., 84 Iowa 141, 146, 50 N.W. 568, 569, it is said:

"Insurance companies cannot lead customers to rely upon their usages, course of business, and the declarations of their officers, which disarm vigilance, overcome watchfulness, and remove stimulus to promptness in payments provided by their policies, and then rigidly enforce the conditions of payment. They must give to the customers the indulgence which they thus promise." See also Trotter v. Grand Lodge, 132 Iowa 513, 109 N.W. 1099, 7 L. R. A., N. S., 569, 11 Ann. Cas. 533.

For like authority see Ibs v. Hartford Life Ins. Co., 121 Minn. 310, 141 N.W. 289, Ann. Cas. 1914C 798; Brown v. State Auto. Ins. Assn., 216 Minn. 329, 12 N.W.2d 712; Hanover Ins. Co. v. McLoney & Sons, 205 F. Supp. 49; Hully v. Aluminum Co. of America, 143 F. Supp. 508; Seavey v. Erickson, 244 Minn. 232, 69 N.W.2d 889, 52 A. L. R.2d 1144.

Plaintiff, as did the trial court, relies heavily on Seavey v. Erickson, supra. We believe it supports the trial court. Defendant disagrees and argues Munro v. Boston Ins. Co., 370 Mich. 604, 122 N.W.2d 654 (1963), is decisive here. It involves a fire insurance policy written in 1955 which expired in 1960. The policy never had been renewed nor had the insured requested the agent to renew it. The agent and the insurer did not desire to execute another policy. The insured attempted to prove his case by showing the custom of other agencies in the community of giving notice of the date of expiration of coverage. The facts clearly distinguish the Munro case from the case at bar.

It is our conclusion the decree of the trial court should be and it is affirmed.—Affirmed.

All JUSTICES concur.